**UNITED STATES of America,
Plaintiff,**

v.

**Jeremy JACOBS, Defendant.**

**Misc. No. 2528.**

United States District Court,
C. D. California.

Jan. 22, 1971.

**1300**

Robert L. Meyer, U. S. Atty., Dennis E. Kinnaird, Asst. U. S. Atty., Chief, Fraud and Special Prosecutions, and John W. Hornbeck, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Joseph A. Ball and Douglas Dalton, Long Beach, Cal., for defendant.

## OPINION, FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR JUDGMENT FOR DEFENDANT

HAUK, District Judge.

This is a contempt proceeding arising out of the failure to produce a document before the Grand Jury pursuant to two subpoenas duces tecum. The cause came on regularly for hearing and trial before the Court sitting without a jury on an order to show cause why the defendant, Jeremy Jacobs, should not be held in criminal and civil contempt for noncompliance with Grand Jury subpoenas returnable August 13 and September 24, 1970. The government contends that the defendant had the ability to produce the document when

the subpoenas were served, and willfully failed to produce it when he appeared before the Grand Jury. The defendant contends that he did not have the ability to produce the document because he did not have it, and that even if he had the document he would have been entitled to refuse to produce it because it was a privileged document. The Court finds that each of the defendant's contentions is well taken, and that he is therefore not guilty of contempt. The facts are as follows:

The document in question is not in evidence, but was described by Benjamen Reisman, who was the author of the document. It was a memorandum from Reisman to John Berry, dated December 30, 1966. Reisman was an attorney for Emprise Corporation. Berry was a certified public accountant who was employed by Reisman to assist him in giving a legal opinion to Emprise Corporation and its officers with respect to a proposed loan by Emprise Corporation to Phillip Troy.

At the time the memo was written, the chief executive officer of Emprise Corporation was Louis Jacobs. He was the father of defendant Jeremy Jacobs, and is now deceased. Prior to writing the memo, Reisman conferred with Louis Jacobs. Louis Jacobs related to Reisman certain facts pertaining to the proposed Troy loan. These communications were made in confidence for the purpose of obtaining a legal opinion from Reisman with respect to the transaction.

In order to give the legal opinion requested by Louis Jacobs, it was necessary for Reisman to have the technical assistance of Berry, the certified public accountant. For that purpose, Reisman wrote the memo in question wherein he related to Berry in confidence the facts pertaining to the transaction which had been disclosed to him by Louis Jacobs. Copies of the memo were also sent to other officers of Emprise Corporation, who would participate in the corporate decision to be made in the matter based on Reisman's legal advice.

There were two Grand Jury subpoenas: One was served on the "custodian of records" of Emprise Corporation on July 31, 1970; the other was served on the defendant Jeremy Jacobs on September 22, 1970. By this time Louis Jacobs was deceased, and his son, Jeremy Jacobs, was president of Emprise Corporation.

The first subpoena was returnable on August 13, 1970, and called for production of all checks, memoranda, files, correspondence, and other records relating to certain loans made by Emprise Corporation, including the Phillip Troy loan. On August 13, 1970, Else Whaley, as custodian of records, appeared before the Grand Jury and produced the Troy loan file and the other loan files described in the subpoena.

The loan files were then examined by Assistant United States Attorney John W. Hornbeck. Hornbeck found a memo in one of the other loan files, namely, the Rooks-Kachino file, which described three other documents which could not be found in any of the files. These were: (1) A statement, report and letter from Peter Bellanca, dated December 23, 1966; (2) a memo from Reisman to Berry, dated December 30, 1966; and (3) a report of Berry, dated January 25, 1967.

Since the three documents described above were not in any of the files of Emprise Corporation which had been produced pursuant to the first subpoena, Hornbeck made inquiry, and Jeremy Jacobs attempted to locate the three documents. They could not be found among any of the Emprise Corporation records. Jacobs then asked Berry to bring his file to the Emprise office to see whether the documents might be in Berry's file. Berry brought his file to Jacobs' office on August 23, 1970. At that time Jacobs examined the file and noticed that there were some documents in Berry's file which had not been in the Emprise Corporation files.

Everyone agrees that two of the documents described above were in Berry's

file at that time, namely: the statement, report and letter from Peter Bellanca, dated December 23, 1966 and the report of Berry, dated January 25, 1967. The question is whether the memo from Reisman to Berry, dated December 30, 1966, was then in Berry's file. Berry testified that he thought the Reisman memo was in his file at that time, but he is undoubtedly mistaken. Berry did not examine his file before taking it to Jacobs' office, and he did not personally look at the document which he thinks was the Reisman memo when he was in Jacobs' office. His only basis for saying that he thought his file then contained the Reisman memo was that Jacobs read to him a few lines from a two-page document wherein Reisman stated to Berry that certain work he had requested might take six to eight hours. Whatever this document was, it was not the Reisman memo dated December 30, 1966, because Reisman, who was the author of the memo, was positive that it was only a one-page document and did not contain any estimate of time for the work therein requested of Berry. Berry and Jacobs were together in Jacobs' office during the entire time that Jacobs had access to the file. After examining the file, they agreed that Jacobs could make a copy of the file. Jacobs called his secretary, and handed her the file at the door of the office. When the secretary returned with the file, she handed it to Jacobs at the door of the office, and Jacobs returned it to Berry.

Assistant United States Attorney Hornbeck later examined Berry's file, and found that it did not contain the Reisman memo. Since Berry had told Hornbeck that he thought the Reisman memo had been in the file when Jacobs examined it, Hornbeck apparently concluded that Jacobs had taken the Reisman memo out of the Berry file. Horn-

beck then caused the second subpoena duces tecum to be issued and served on Jacobs, which subpoena described all three of the documents which had been referred to in the Emprise Corporation file, but which were not in the files.[1] The second subpoena was served on September 22, 1970, and was returnable on September 24, 1970. On the latter date, Jacobs appeared before the Grand Jury and produced two of the documents which had been copied from Berry's file, namely: the statement, report and letter from Peter Bellanca, dated December 23, 1966 and the report of Berry, dated January 25, 1967. He did not produce the memorandum from Reisman to Berry, dated December 30, 1966, because he did not have any such document. This contempt proceeding followed.

■ It is, of course, elementary that a witness is not guilty of contempt for failure to produce a document described in a subpoena duces tecum, unless it is shown that he had the ability to produce the document. United States v. Patterson, 219 F.2d 659 (2d Cir. 1955); United States v. Pollock, 201 F. Supp. 542 (W.D.Ark.1962); Healey v. United States, 186 F.2d 164, 171 (9th Cir. 1950). For a criminal contempt, the proof must be beyond a reasonable doubt, whereas only a preponderance of evidence is required for civil contempt. Cliett v. Hammonds, 305 F.2d 565, 570 (5th Cir. 1962). Here the government charges both civil and criminal contempt, but the proof is unsatisfactory under either standard.

■ The government's theory is that the Reisman memo was in the Berry file on August 23, 1970, when Jacobs examined the file in his office, and that Jacobs removed the Reisman memo from the Berry file at that time. The evidence will not support that theory. In the first place, there is no satisfactory proof under any standard that the Reis-

---

1. One can understand why Hornbeck attempted to subpoena the Reisman memo from Jacobs. He thought the Reisman memo had been in Berry's file and that Jacobs had removed it. But the reason for subpoenaing the other two documents from Jacobs is not clear. Hornbeck knew that those documents were still in Berry's file and that Jacobs only had copies.

man memo was in the Berry file on August 23, 1970, when Jacobs examined the file. Secondly, Jacobs had no opportunity to remove any document from Berry's file. Even if it were assumed that the Reisman memo was in the Berry file at that time, the proof is still clear that the defendant did not remove this document or any other document, and had no opportunity to do so. The basic problem is in making the assumption that the Reisman memo was actually in the file. But for Berry's belief that it was there, all of the evidence indicates that it was not. The only reasonable inference that can be drawn is that Berry was mistaken in his belief, and that the Reisman memo dated December 30, 1966, was not in his file when he showed it to Jacobs. Any contrary inference is, in any event, dispelled by the fact that when the possibility of the existence of the document was specifically brought to the defendant's attention, he made a diligent search, and could not find any such document.

■ But even if it were assumed that there was a Reisman memo in Berry's file, and that Jacobs did somehow manage to remove it in Berry's presence,[2] Jacobs still would have been justified in refusing to produce the document on the ground of attorney-client privilege. This was a memo from a lawyer to an accountant stating facts in confidence (which had been related to the attorney by the client) for the purpose of the lawyer obtaining the accountant's assistance in rendering a legal opinion. It was therefore a privileged document. United States v. Kovel, 296 F.2d 918 (2d Cir. 1961); Bauer v. Orser, 258 F.Supp. 338 (D.N.D.1966).

■■ The government contends that any privilege was waived when Jacobs failed to assert the privilege when he

appeared before the Grand Jury. A person does not waive the attorney-client privilege merely by failure to assert it. Waiver occurs only when the privileged matter is disclosed without assertion of the privilege. It is the disclosure of the privileged matter which gives rise to the waiver, not the failure to assert the privilege. For example, if the client testifies to the confidential communication, or remains silent while the attorney testifies, there is a waiver by the client's voluntary disclosure or by permitting the attorney to voluntarily disclose.[3] Steen v. First National Bank, 298 F. 36 (8th Cir. 1924). But mere failure to assert the privilege without a disclosure is not a waiver. If a witness refuses to testify on some other ground, such as self-incrimination, and that ground is held invalid, he may then assert the attorney-client privilege though he did not assert it when first called to testify. In re Bonano, 344 F.2d 830 (2d Cir. 1965).

■ In the case at bench, the defendant Jacobs cannot be deemed to have waived the attorney-client privilege by failing to assert the privilege when he appeared before the Grand Jury. At that time there was no reason to assert the privilege. Jacobs did not have the document, and so all he could say was that he did not have it. If he had been asked to disclose the contents of the memo, and had done so, that might have constituted a waiver. But he was not asked to disclose the contents of the document, and probably could not have done so if he had been asked, since he had never seen the document. The fact remains that the Reisman memo was a privileged document. Jacobs would have been entitled to refuse to produce it if he had it, and this is an independent ground for holding that he is not guilty of contempt.

---

2. There is, of course, no such evidence. Berry testified that he did not see Jacobs remove anything from the file, and that he did not hear any direction to the secretary to remove anything.

3. There is no contention that there was a waiver by Reisman's testimony in this proceeding. Reisman's testimony as to the contents of the memo was taken pursuant to a stipulation that it would not constitute a waiver.

The Court therefore finds that the defendant Jeremy Jacobs is not guilty of civil or criminal contempt by reason of his failure to produce the memo from Reisman to Berry, dated December 30, 1966, pursuant to the subpoenas duces tecum for the reasons that: (1) He did not have the document in his possession, custody or control, and thus did not have the ability to comply with the subpoenas; and (2) if he did have the document, he was entitled to refuse to produce it because it was a privileged document.

In accordance with the foregoing, which shall also constitute findings of fact and conclusions of law pursuant to Rule 23 F.R.Crim.P. and Rule 52 F.R. Civ.P., the Court now makes its formal Findings of Fact, Conclusions of Law and Order.

## FINDINGS OF FACT

1. A subpoena duces tecum, returnable August 13, 1970, before the Grand Jury sitting in Los Angeles, California, was issued and directed to the Custodian of Records of Emprise Corporation, 703 Main Street, at Tupper, Buffalo, New York, requiring the custodian of records to produce all checks, memoranda, files, correspondence, and other records relating to loans by Emprise Corporation to Alex Kachinko, Arthur T. Rooks and Phillip Troy, and records relating to the repayment of these loans.

2. Said subpoena duces tecum was served upon an officer of Emprise Corporation, and Else Whaley, as custodian of records of Emprise Corporation, duly appeared on August 13, 1970, before the Grand Jury sitting in Los Angeles, and produced the loan files and records described in said subpoena duces tecum.

3. One of the files produced contained a document which described three other documents which were not in the file. The other documents are described as follows:

(a) A statement, report and letter from Peter Bellanca, dated December 23, 1966;

(b) A report of John Berry, dated January 25, 1967; and

(c) A memorandum from Benjamin Reisman to John Berry, dated December 30, 1966.

4. On September 18, 1970, a subpoena duces tecum returnable on September 24, 1970, before the Grand Jury sitting in Los Angeles, California, was issued and directed to Jeremy Jacobs, President of Emprise Corporation, requiring him to produce the three documents described in Finding No. 3.

5. On September 24, 1970, Jeremy Jacobs appeared before the Grand Jury sitting in Los Angeles, California, and produced before the Grand Jury two of the documents described in Finding No. 3, which were copies thereof procured from the files of John Berry after the return on the first subpoena, but he did not produce the memorandum from Reisman to Berry dated December 30, 1966.

6. There is not sufficient evidence to establish beyond a reasonable doubt or by a preponderance of the evidence that said memorandum from Reisman to Berry, dated December 30, 1966, was in the possession of Emprise Corporation or any of its officers on July 31, 1970, the date of service of the first subpoena, or at any other time thereafter, or that Emprise Corporation or any of its officers had or now have any knowledge of its location, or that Emprise Corporation or any of its officers had or have the ability to produce said document before the Grand Jury.

7. There is not sufficient evidence to establish beyond a reasonable doubt or by a preponderance of the evidence that at all material times, including the date of September 24, 1970, when Jeremy Jacobs appeared before the Grand Jury, that he had or now has the ability to produce the memorandum from Reisman to Berry, or any copy thereof; or that he did not believe in good faith that he did not have and does not now have such document, or any copy thereof, in his possession, custody or control.

8. Benjamin Reisman, who wrote the memorandum dated December 30, 1966, was on that date and at all times since has been an attorney at law, licensed and admitted to practice in the State of New York. In December of 1966, prior to the writing of said memorandum, Reisman, in his capacity as a lawyer, conferred with L. J. Jacobs, another officer of Emprise Corporation. Reisman was at that time employed by Emprise Corporation to give a legal opinion. For that purpose and in that connection L. J. Jacobs, as an officer of Emprise Corporation, related to Reisman in confidence certain facts upon which Reisman was to base his legal opinion.

9. John Berry, in December, 1966, and at all times thereafter, was and now is a certified public accountant, duly licensed to to practice his profession of accounting in the State of New York. Reisman required the technical assistance of an accountant in the preparation of the legal opinion which he was employed to prepare for Emprise Corporation. Berry had technical training, experience, and knowledge in the fields of accounting, tax regulations, and security regulations; and Reisman required the aid of Berry to analyze and consider the facts which would be the basis of the legal opinion. Reisman employed Berry to assist him in the preparation of the legal opinion, and for that purpose Reisman wrote the memorandum dated December 30, 1966, and therein and for that purpose he related to Berry in confidence the facts which had been related to him by L. J. Jacobs during the conference referred to in Finding No. 8.

10. Reisman forwarded his memorandum of December 30, 1966, to Berry, and forwarded copies of his memorandum to officers of Emprise Corporation who were persons within the control group of the corporation and who would participate in a decision based upon the legal opinion of attorney Reisman.

11. Neither Emprise Corporation nor Jeremy Jacobs nor any other officers of Emprise Corporation has at any time waived the attorney-client privilege respecting said document. Jeremy Jacobs at all times has been and now is entitled to assert the privilege as to the document subpoenaed if he ever had or now has it in his possession or ever had or now has the ability to produce said document.

## CONCLUSIONS OF LAW

From the foregoing facts, the Court makes the following conclusions of law:

### I

That a confidential relationship existed between Emprise Corporation and its officers, on the one hand, and Benjamin Reisman, an attorney at law, on the other hand, at that time in December, 1966, when Reisman was hired as a lawyer to give a legal opinion concerning a business transaction in which Emprise planned to participate.

### II

All communications between L. J. Jacobs and Reisman concerning the business transaction in which Emprise planned to participate were within the lawyer-client privilege, and neither Reisman nor Emprise Corporation nor any of its officers can be compelled to relate the details of that conversation concerning which Reisman was to render a legal opinion.

### III

Reisman established a relationship with John Berry, a certified public accountant, which was within the lawyer-client relationship when Reisman employed Berry to give him technical assistance in the preparation of the legal opinion for Emprise and Jacobs; the memorandum which Reisman wrote to Berry on December 30, 1966, stated the facts which had been told to Reisman by L. J. Jacobs within the confidence of a lawyer-client relationship, and were communicated to Berry by said memorandum so that Berry could assist Reisman in preparation of the legal opinion being prepared by Reisman.

### IV

Said memorandum from Reisman to Berry, dated December 30, 1966, was

prepared and delivered to Berry as a confidential communication within the lawyer-client privilege, and Emprise Corporation and its officers, including Jeremy Jacobs, its President, at all times had and now have the privilege to refuse to produce said document before the Grand Jury sitting in Los Angeles, California, through subpoena duces tecum.

## V

There is not sufficient evidence to establish beyond a reasonable doubt or by a preponderance of the evidence that Jeremy Jacobs, on July 31, 1970, the date of service of the first subpoena, or thereafter, knew or now knows where said document was or is now located or filed, or who had or now has possession of said document, or if the document was or now is in existence; or that Jeremy Jacobs had or now has the ability to produce said document before the Grand Jury sitting in Los Angeles, California.

## VI

There is not sufficient evidence to establish beyond a reasonable doubt or by a preponderance of the evidence that Emprise Corporation or Jeremy Jacobs or any other officer of Emprise Corporation at any time waived the privilege of refusing to produce the document which had been prepared within the confidential relationship of lawyer-client, Emprise Corporation and its officers as clients, and Benjamin Reisman as lawyer.

## VII

Plaintiff United States has failed to establish beyond a reasonable doubt that defendant Jeremy Jacobs was or is guilty of criminal contempt in violation of 18 U.S.C. § 401, or otherwise.

## VIII

Plaintiff United States has failed to estalish by a preponderance of the evidence that defendant Jeremy Jacobs was or is in civil contempt or should be so held in violation of 18 U.S.C. § 401, or otherwise.

## ORDER

By reason of the foregoing Opinion, Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED that judgment be entered in favor of defendant, Jeremy Jacobs, finding him not guilty of criminal contempt and further finding that he is not in civil contempt.

Let judgment be entered accordingly.