431 So.2d 329 (1983)
EASTERN AIR LINES, INC., and Frank Borman, Thomas R. Buttion and William G. Bell, and Francis A. Anania, Esquire, Petitioners,
v.
Daniel G. GELLERT, Respondent.
No. 82-2620.
District Court of Appeal of Florida, Third District.
May 17, 1983.
*330 Blackwell, Walker, Gray, Powers, Flick & Hoehl and James E. Tribble and Todd A. Cowart, Thornton, David & Murray and Carolyn A. Pickard and Barry L. Davis, Miami, for petitioners.
David Popper, Miami, for respondent.
Before NESBITT, DANIEL S. PEARSON and FERGUSON, JJ.
DANIEL S. PEARSON, Judge.
This petition for writ of certiorari seeks review of an order denying petitioners' motion to quash a subpoena duces tecum. The subpoena commanded Francis A. Anania, a *331 partner in the law firm of Blackwell, Walker, Gray, Powers, Flick & Hoehl, to produce at his scheduled deposition records of (1) all moneys paid to him and his law firm by its client Eastern Air Lines, Inc. in respect to any litigation between Daniel G. Gellert and Eastern; and (2) names and addresses of parties to whom long distance phone calls were made and the nature of the phone calls which correspond to telephone numbers appearing on telephone bills previously produced by the firm.
Anania's motion to quash essentially asserted that the documents requested were protected from discovery by the attorney-client and work product privileges and, at least in part, were irrelevant and not calculated to lead to the discovery of admissible evidence in the case.
The underlying controversy began as a defamation action brought by Gellert, an Eastern Air Lines pilot, against Eastern and three of its executives, Borman, Buttion and Bell. The petitioners counterclaimed in kind against Gellert. Particularly pertinent here is Count VI of the counterclaim, which accused Gellert of defaming Bell in a letter stating that Bell paid Anania $50,000 to induce Anania to make a fraudulent misrepresentation to a doctor for the purpose of getting Gellert grounded. This payment was said by Gellert to have been made in connection with a 1975 action by Gellert against Eastern which was resolved adversely to Gellert. See Gellert v. Eastern Air Lines, Inc., 370 So.2d 802 (Fla. 3d DCA 1979), rev. denied, 381 So.2d 766 (Fla. 1980). Ostensibly, the documents which Gellert now seeks from Anania are sought for the purpose of proving that the payment and fraudulent misrepresentation were made.
Although the order under review specifically addressed only the attorney-client privilege claim, the denial of the motion to quash necessarily rejected the petitioners' other claims. We therefore address all of the petitioners' essential claims.
It is apparent that the records of payment and the names and addresses of parties to whom long distance telephone calls were made are not documents which come within the definition of work product, since neither of these records was prepared in anticipation of litigation or for trial. See Fla.R.Civ.P. 1.280(b); Surf Drugs, Inc. v. Vermette, 236 So.2d 108 (Fla. 1970). Since these documents are not ab initio within the work product privilege, no showing to overcome the privilege, see Fla.R.Civ.P. 1.280(b)(2); Alachua General Hospital, Inc. v. Zimmer USA, Inc., 403 So.2d 1087 (Fla. 1st DCA 1981); Insurance Company of North America v. Noya, 398 So.2d 836 (Fla. 5th DCA 1981); Associated Medical Institution, Inc. v. Trube, 394 So.2d 563 (Fla. 3d DCA 1981), was needed.
It is equally apparent that the records of payments and the names and addresses of parties to whom long distance phone calls were made do not implicate the attorney-client privilege. In re Grand Jury Proceedings (Slaughter), 694 F.2d 1258 (11th Cir.1982) (records of payments made by a client to an attorney are not covered by the attorney-client privilege in the absence of extraordinary circumstances); In re Grand Jury Proceedings, 689 F.2d 1351 (11th Cir.1982) (same); In re Grand Jury Proceedings (Fine), 641 F.2d 199 (5th Cir.1981) (same); United States v. Ponder, 475 F.2d 37 (5th Cir.1973) (same); Tillotson v. Boughner, 350 F.2d 663 (7th Cir.1965) (disclosure of identity of client not privileged, unless disclosure will amount to disclosure of the communication itself); N.L.R.B. v. Harvey, 349 F.2d 900 (4th Cir.1965) (same); Baird v. Koerner, 279 F.2d 623 (9th Cir.1960) (same). While we must, accordingly, reject the petitioners' claims of privilege as to these records, their claim that the request for the payment records is overly broad and lacking in sufficient specificity has merit. The only possible relevancy of records showing payments made by Eastern to the law firm is that such records might reveal the payment which Gellert said was made to Anania by Bell in connection with the 1975 litigation, which has long since terminated. However, the instant subpoena calls for payment records in respect to any litigation between Gellert and Eastern *332 and thus brings within its ambit a number of other disputes between these parties that have found their way into the courts, including one which still pends in this court. See Eastern Air Lines, Inc. v. Gellert, Case No. 80-2376. Therefore, this omnibus request for payment records should not have been sanctioned by the trial court without the imposition of narrowing conditions and safeguards. See Goodyear Tire & Rubber Company v. Cooey, 359 So.2d 1200 (Fla. 1st DCA 1978).
We turn now to that part of the subpoena duces tecum requesting documents concerning "the nature of the phone calls." It may very well be that some or all of such documents are arguably within either the work product or attorney-client privilege. Whether they are or not is a determination which must be made, not by the party asserting the privilege, but by the court after an examination of the documents or the equivalent. Colton v. United States, 306 F.2d 633 (2d Cir.1962); United States v. Kovel, 296 F.2d 918 (2d Cir.1961) (attorney-client); see Coastal States Gas Corporation v. Department of Energy, 617 F.2d 854 (D.C. Cir.1980) (work product). In the present case, however, such a determination was not made, apparently because the trial court concluded that documents describing "the nature of the phone calls" could not, as a matter of law, involve work product, and that even if some of these documents were protected from discovery by the attorney-client privilege, that privilege had been waived.
The assumption that documents calling for "the nature of the phone calls" do not, in any instance, contain material prepared for litigation or, indeed, even the mental impressions or opinions of the attorney, is unwarranted. It very well may be that the document describing the nature of the phone call is as innocuous as "Talked to Mr. Jones re pending litigation between Gellert and Eastern," and thus discoverable, but, on the other hand, the document could contain material that would bring it within the work product privilege and entitle it to at least qualified, if not complete, protection from disclosure.
Similarly, the trial court erred in ruling that the attorney-client privilege had been waived. This ruling was based on the singular fact that during the course of discovery in this action Gellert filed requests for admissions, one of which asked the petitioners to
"Admit or deny that Francis A. Anania in deposing Dr. Giffen in Texas on or about May 26, 1977 for Circuit Court Case Number 75-34034 for the Eleventh Circuit of Florida, did present a co-pilot report which was given as a 1973 report when in truth and in fact [it] was a 1963 report."
The petitioners answered, "Without knowledge; therefore denied. Ask Fran Anania." It is from this answer that the trial court concluded that the attorney-client privilege had been waived.
First, it is difficult to see how Eastern's telling Gellert to ask Fran Anania what he did at a deposition of a Dr. Giffen could conceivably be a waiver of Eastern's attorney-client privilege. Second, even if this answer could be construed as an invitation to ask Fran Anania about matters protected by the attorney-client privilege, waiver does not occur until there has been an actual disclosure of the confidential communication. § 90.507, Fla. Stat. (1981); United States v. Jacobs, 322 F. Supp. 1299 (C.D.Cal. 1971) (failure to invoke privilege without disclosure of confidential information is not a waiver). Thus, the petitioners' very insistence on the privilege in the trial court prior to any disclosure of any confidential communication is totally inconsistent with respondent's claim that the attorney-client privilege has been waived. Third, even if, arguendo, waiver had occurred by some disclosure relating to the report Fran Anania presented to the witness at a deposition, the attorney-client privilege would be waived with respect to other unrevealed communications only to the extent that they are relevant to the communication already disclosed. In re Estate of Marden, 355 So.2d 121 (Fla. 3d DCA), cert. denied, 361 So.2d 833 (Fla. 1978); Goldman, Sachs & Co. v. Blondis, 412 *333 F. Supp. 286 (N.D.Ill. 1976); Magida v. Continental Can Co., 12 F.R.D. 74 (S.D.N.Y. 1951), aff'd., 231 F.2d 843 (2d Cir.), cert. denied, 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956); see Hearn v. Rhay, 68 F.R.D. 574 (E.D.Wash. 1975); United States v. Monti, 100 F. Supp. 209 (E.D.N.Y. 1951). Fourth, again contrary to the trial court's view, the attorney-client privilege is not forfeited simply because it may be essential to Gellert's defense of truth to Count VI of the counterclaim that he prove the fraudulent payment by Bell to Anania. The case of Leithauser v. Harrison, 168 So.2d 95 (Fla. 2d DCA 1964), upon which the trial court relied, stands not only for the proposition that a communication made for the purpose of committing a fraud is not privileged, but, of equal importance, that the party seeking the disclosure must make a showing that the communication partook of fraud before the privilege disappears. Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933) (prima facie evidence of fraud, not mere allegation of fraud, is required to abrogate the attorney-client privilege); Natta v. Zletz, 418 F.2d 633 (7th Cir.1969) (same); Union Camp Corporation v. Lewis, 385 F.2d 143 (4th Cir.1967); United States v. Bob, 106 F.2d 37 (2d Cir.), cert. denied, 308 U.S. 589, 60 S.Ct. 115, 84 L.Ed. 493 (1939). The respondent made no effort to make such a showing. Even had he done so, this showing, even as a showing of waiver, while sufficient to overcome the privilege as to that communication if unrebutted, does not make the privilege cease to exist as to other communications. Thus, under any circumstance, the trial court's finding that the attorney-client privilege was waived departed from the essential requirements of the law.
Accordingly, certiorari is granted, and the order under review is vacated in part. The names and addresses of parties to whom long distance phone calls were made are to be produced pursuant to the subpoena duces tecum. The trial court shall make an individual determination upon an in camera inspection whether documents describing the nature of the phone calls which the petitioners assert come within the work product privilege are in fact so privileged. If it is determined that any of such documents are so privileged, the respondent will thereafter have the opportunity to show that "he has need of such materials in the preparation of his case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." See Fla.R.Civ.P. 1.280(b)(2). If this latter showing is made, the trial court shall nonetheless "protect against disclosure of the mental impressions, opinions or legal theories of an attorney or other representative of [the petitioners] concerning the litigation." See Fla.R.Civ.P. 1.280(b)(2). If the attorney-client privilege is asserted as to any document describing the nature of the phone call, the petitioners are to be given the opportunity to show that the parties to the call were within the relationship of attorney and client and that the communication was privileged. The respondent, in turn, may make a showing that the privilege as to that and related communications was waived or did not obtain because made for the purpose of perpetrating a fraud. In respect to the records of payment from Eastern to its attorneys, the trial court shall appropriately limit its order to payments relevant to, or calculated to lead to, evidence admissible in the pending case.
Certiorari granted; order under review vacated in part.