### In re WITNESS–ATTORNEY BEFORE GRAND JURY NO. 83–1.

United States District Court, S.D. Florida.

Jan. 24, 1984.

reduced to an amount in no event greater than $74.1 million. Concession Agreement dated October 18, 1978, §§ 1.06, 7.01(e) and 7.02(b).

Robert Lipman, Asst. U.S. Atty., U.S. Atty's Office, Miami, Fla., for the United States.

Jeffrey S. Weiner, Robert G. Amsel, Weiner, Robbins, Tunkey & Ross, Miami, Fla., for witness.

Neal R. Sonnett, Benedict P. Kuehne, Bierman, Sonnett, Shohat & Sale, Miami, Fla., amicus curiae for Nat. Crim. Defense Attys. Ass'n.

HOEVELER, District Judge.

THIS CAUSE is before the Court on the government's Motion to Compel the Witness-Attorney to testify and produce documents. Hearings were held at which evidence was proffered and argument heard. Being advised, the Court denies the Government's motion.

## FACTS

In late January of 1982, the witness (hereafter referred to as the "Witness-Attorney"), a licensed practicing attorney was retained to represent Messrs. Castillo Robinson, Ramon Perdomo, Jesus Rodriguez and Dagoberto Gonzalez, all defendants in the case of *United States of America v. Roy Allen, et al.*, 82–63–CR–WMH, in the United States District Court for the Southern District of Florida. These four defendants were charged in a two count indictment alleging marijuana violations. Eventually, the four defendants pled guilty to one count of the indictment and the government agreed to dismiss the remaining count. The four defendants were subsequently sentenced and surrendered to serve their sentences.

The uncontested facts and findings of fact are that a certain unnamed third party or parties retained the Witness-Attorney to represent the defendants in *United States of America v. Roy Allen, et al., supra.*

Prior to the time the Witness-Attorney was retained, the paying party or parties sought legal advice from the Witness-Attorney with respect to the party or parties actual involvement in past criminal acts relating to the very same charges brought against the defendants in *United States of America v. Roy Allen, et al.* This third party client(s) also sought advice from the Witness-Attorney concerning bonding arrangements for the defendants and the logistics of "bonding out" the defendants based on the fact that corporate surety bonds had previously been set by a United States Magistrate.

Subsequently, the Witness-Attorney's unnamed client(s) arrived at the Witness-Attorney's law offices to continue his, her or their ongoing discussions concerning the case. Subsequent to these discussions, the Witness-Attorney became aware that one or two bondsmen were present in the Witness-Attorney's law offices concerning an unrelated matter. The Witness-Attorney introduced his client(s) to one or two bondsmen by first name(s) only, invited their use of his office conference room to discuss matters relating to the corporate surety bonds, and left their presence immediately thereafter. [Grand Jury Testimony of 3–29–83, pp. 72, 77].

The government has served subpoenas duces tecum on one or both of the bondsmen present during this introduction and it has learned through documentation that the individuals introduced to the bondsmen by the Witness-Attorney were Carlos Perez and Raul Ramirez. The Witness-Attorney has neither confirmed or denied whether, in fact, these two individuals are the unnamed clients. The government has conceded that it has not conducted any further investigations to confirm the identities of these two individuals and whether they were connected in any way with providing the legal fees for the defendants in *United States v. Roy Allen, et al.*, or in any way connected with the marijuana smuggling operation which formed the basis of the charges in *United States v. Roy Allen, et al.*

Parenthetically, it should be noted that in December 1982, and January 1983, the Witness-Attorney filed motions for reduction of sentence, pursuant to Rule 35 of the Federal Rules of Criminal Procedure, on behalf of his clients in *United States of America v. Roy Allen, et al., supra.* In response to this motion, the government filed a document entitled "Government's Combined Motion for Hearing on Possible Conflict of Interest by Defense Counsel and Partial Response to Motion to Reduce Sentence." In this, the government suggested that the Witness-Attorney may have a conflict of interest in connection with the pending motions to reduce sentence and suggested that (1) the Witness-Attorney's clients may have knowledge as to who planned a major drug smuggling operation; (2) the most logical step to bring about a reduction in the Witness-Attorney's clients' sentence would be for these clients to inform the government as to who planned the drug smuggling operation; (3) the Witness-Attorney may have had an attorney-client relationship with the planners of the marijuana smuggling operation and further, that the person or persons who planned the drug smuggling operation may have paid the legal fees for the Witness-Attorney's clients. The Witness-Attorney filed a response to this motion and extensive oral argument was heard before this Court. On March 29, 1983, this Court denied the Government's "Motion for Hearing on Possible Conflict of Interest" stating, *inter alia,* that "... This Court finds no showing from the record presented that there was any conflict of interest." The government did not appeal that order.

On January 12, 1983, the Witness-Attorney was subpoenaed to testify before the Grand Jury. The subpoena compelled the Witness-Attorney to appear before Federal Grand Jury 83–1 and produce documents and provide testimony relating to the amount of legal fees paid in *United States v. Roy Allen, et al.,* and the identity or identities of the party(ies) who paid these fees. The Witness-Attorney appeared at the called for time and place.

The Witness-Attorney appeared before the grand jury and refused to provide information relating to the *identity* of the Witness-Attorney's clients who may have paid the legal fees in *United States v. Roy Allen, et al., supra,* and who sought legal advice for the Witness-Attorney with respect to their involvement in past criminal acts relating to the charges in *United States of America v. Roy Allen, et al., supra.* The Witness-Attorney did, however, comply with the other aspects of the subpoena by turning over to the grand jury the records of his law firm indicating the fees paid.

On April 27, 1983, the government filed a "Motion to Compel Grand Jury Witness to Testify and Produce Documents." In its motion, the government urged that Witness-Attorney to reveal to the grand jury the identity of the Witness-Attorney's unnamed client(s) who was introduced to the bondsman or bondsmen. In addition, the government sought, for the period of January 1, 1980, to February 15, 1983, any and all documents, papers, records, and recordings relating to or concerning bail bond fees, collateral for bail bond, and legal fees—in any criminal case or any forfeiture case whatsoever—directly or indirectly paid, transferred, delivered, arranged, or discussed by any of the following persons: (a) Carlos Perez; (b) Raul Ramirez.

During the numerous oral arguments before this Court on the government's Motion to Compel, the government has conceded that no crime-fraud exception to the attorney client privilege exists or existed in this case. That is, there was no proof of a prior agreement, either explicit or implicit, between or among the defendants in *United States of America v. Roy Allen, et al., supra,* and others to the effect that in the event that one of the conspirators was arrested, he would be provided with an attorney's services.

## CONCLUSIONS OF LAW

■ Initially, it should be noted that no waiver of the attorney-client privilege resulted by the Witness-Attorney's introduction of this client(s) to the bondsman or bondsmen. There was no "meeting" between the Witness-Attorney, his client(s) and any bondsman, but rather a brief, perfunctory introduction, by first name(s) only, after which the Witness-Attorney left the individuals to talk amongst themselves. [Grand Jury Testimony of 3–29–83, pp. 68–72, 77]. The government has provided no evidence, even after having the benefit of testimony from at least one of the bondsmen, that the "meeting" was anything more than a very brief perfunctory introduction. Applying any recognized test, there were no "communications" between the attorney and client shared by other third parties. There was, therefore, no waiver.

Moreover, it should be noted that a bondsman, like a lawyer's secretary, law clerk, or other support personnel, is often, and especially in this case since corporate surety bond had been ordered, an essential person in an attorney's full representation of his clients. In *United States v. Kovel,* 296 F.2d 918 (2d Cir.1961), Judge Friendly, writing for the court, emphasized that:

> On the other hand, in contrast to Tudor times when the privilege was first recognized, see 8 Wigmore, *Evidence,* § 2290, the complexities of modern existence prevent attorneys from effectively handling clients of theirs without the help of others; few lawyers could now practice without the assistance of secretaries, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, and aids of other sorts. "The assistance of these agents being indispensible to his work and the communications of the client often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents." 8 Wigmore, *Evidence,* § 2301; Annot., 53 ALR 369 [1929].

*       *       *       *       *       *

The presence of the accountant [or as in this case, the bondsman] is necessary, or at least highly useful for the effective consultation between the client and the

lawyer which the privilege is designed to permit.

*Id.* at 921–22. The mere introduction of a criminal defense attorney's client to a bondsman is "necessary, or at least highly useful, for the effective consultation between the client and the lawyer." *United States v. Kovel, supra,* at 922. A substantial portion of a criminal defense attorney's job involves attempting to have his client released on bond and a bondsman is always necessary when a magistrate or judge orders a corporate surety bond. If this Court were to rule that an introduction by a lawyer of a client to a bondsman will always waive the attorney-client privilege as it relates to the client's identity, then, in effect, every time a defendant were granted a corporate surety bond, the defense attorney could be compelled to reveal the identity of his client if the attorney introduced the client to a bondsman. This would be so even though the identity of that client would otherwise be privileged. The realities, particularities and implications of practice before this Court and, even more importantly, the legal rights of the parties will not be overlooked to accommodate the government's understandable concern about drug trafficking.

It is significant to note that the government has stated that it is in possession of the names of the individuals introduced by the Witness-Attorney to the bondsmen. The government has also indicated that it has not made any further investigations or follow-ups in an effort to verify these names and/or to verify whether these individuals were in fact involved in any type of drug smuggling operation.

■ A criminal defense attorney should not be brought before a federal grand jury and be compelled to divulge attorney-client secrets where the government could very well utilize alternative, less intrusive, methods in order to gain the very same information. The admonition of the Fifth Circuit Court of Appeals in *In Re Grand Jury Proceedings; United States v. Jones,* 517 F.2d 666 (5th Cir.1975), is particularly appropriate here:

... The Government should not read this opinion as an invitation to tighten the web of secrecy surrounding its objectives and the nature and extent of information already in its hands when it calls lawyers to testify before prosecutorial bodies.

*Id.* at 675. Before the government will be permitted to compel witness-attorneys to testify before a grand jury regarding matters which could be considered to be protected by the attorney-client privilege, it ought to be compelled to gain this information by first exhausting all of its investigatory powers which would not tread into the sacred area protected by the attorney-client privilege.

■ The identity of the Witness-Attorney's unnamed client(s) is privileged information protected by the attorney-client privilege, under the circumstances of this particular case. The general rule is that matters of client identity generally fall outside the traditional common law attorney-client privilege. *In Re Grand Jury Proceedings (Lawson),* 600 F.2d 215 (9th Cir. 1979); *In Re Grand Jury Proceedings; United States v. Jones, supra.* However, "under certain circumstances, an attorney must conceal even the identity of a client, not merely his communications, from inquiry." *In Re Grand Jury Proceedings; United States v. Jones,* 517 F.2d 666, 671 (5th Cir.1975). The *Jones* Court continued and indicated:

Just as the clients' verbal communications are protected, it follows that other information, not normally privileged, should also be protected when so much of the substance of the communications is already in the government's possession that additional disclosures would yield *substantially probative links* in an existing chain of inculpatory events or transactions. (Emphasis added).

*Id.* at 674. In *In Re Grand Jury Proceedings; Pavlick,* 680 F.2d 1026 (5th Cir., Unit A, 1982), the Court apparently narrowed this exception to apply to disclosures which would supply the "last link in an existing chain of incriminating evidence likely to

lead to the client's indictment." *Id.* at 1027.[1]

■ Under either standard, the identity of the Witness-Attorney's client is privileged in this case. The Witness-Attorney has made repeated representations that his unnamed client(s) not only paid the legal fees for the defendants in the underlying case but also sought legal advice with respect to his, her or their own involvement in past criminal acts relating to the drug smuggling operation which formed the basis of the charges in *United States v. Roy Allen, et al., supra.* The Witness-Attorney linked the unnamed client(s) to involvement in a past drug smuggling operation and as such, the identity of the client(s) would yield "substantially probative links" or "the last link" in an existing chain of incriminating evidence likely to lead to the client(s) indictment. As noted in *In Re Grand Jury Proceedings; United States v. Jones, supra:*

> If relators were compelled to disclose the sought-after items before the grand jury, the unidentified clients—*having been linked by their lawyers to payments in excess of reported income* (the prosecutor need only produce their tax returns) —might very well be indicted.

*Id.* at 674 [emphasis supplied].

■ Additionally, the government has acknowledged that the so-called "crime-fraud exception" to the attorney-client privilege does not apply to the instant case. It is generally accepted that once the government has made a *prima facie* showing that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity, the privilege could not be asserted. *In Re Grand Jury Proceedings (Pavilack), supra; Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933); *United States v. Fried-*

man, 445 F.2d 1076, 1086 (9th Cir.1971). The crime or fraud exception applies even where the attorney is completely unaware that his advice is sought in furtherance of such an improper purpose. *In Re Grand Jury Proceedings (Pavilack), supra; United States v. Friedman, supra,* at 1086. *Clark v. United States, supra,* 289 U.S. at 15, 53 S.Ct. at 469. Since the government has acknowledged that the crime-fraud exception does not apply in the instant case, the Court finds that the crime-fraud exception to the attorney-client privilege cannot compel the disclosures sought by the government in this case.

Aside from the legal and ethical problems associated with requiring the Witness-Attorney to reveal the information sought by the grand jury, it is inevitable that requiring the Witness-Attorney, as well as all attorneys similarly situated to the Witness-Attorney, to act, in effect, as confidential informants and testify against their own client(s) could only serve to further degrade the unfortunate negative image attorneys often possess in our society. Condoning the practice of requiring attorneys to secretly testify against their own clients would only be adding fuel to the fire in a society which is already distrustful of lawyers and the legal system. The attorney-client privilege should not be allowed to be attenuated further.

When an individual walks into an attorney's office and seeks legal advice with respect to past criminal conduct (and, in this case, prefaces his discussions with the attorney that anything said would be kept secret), there can be no question that that individual expects his conversations with the attorney to remain confidential. In certain circumstances, as in the instant case, these confidences would also include the client's identity. If a client feels that part

1. This Court notes that the Pavlick court's reliance on Jones for this proposition appears to be misplaced. In Jones, supra, the Court specifically emphasized: "The government and the court below have taken the position that a client's identity, fee, and bonding arrangements can never be privileged unless disclosure would lead *automatically* to conviction for a criminal offense. *That is not the law.*" [Emphasis supplied]. The Jones court then went on to announce the proper standard which is "substantially probative links." Id. at 674. This Court further notes that Pavlick, supra, is not controlling in this circuit. *Bonner v. City of Prichard,* 661 F.2d 1206. (11th Cir.1981).

or all of his conversations with his attorney may one day be divulged, that client will necessarily refrain from being fully open and truthful with this attorney. This, in turn, will result in less than effective assistance of counsel and could very well result in diminishing the importance of the Sixth Amendment's right to assistance of counsel.

Efforts of the type involved here, regardless of how well intentioned, must be reviewed with exceeding care. The attorney-client relation is one sacred to our system and the protections afforded must be maintained in the proper case, even though the result may be distasteful. As Circuit Judge Politz of the Eleventh Circuit Court of Appeals stated in his well reasoned dissent in *Pavilack, supra:*

> The signs, then, are clear. Soon there will be no distinction. Soon there will be no attorney/client privilege recognized. The drug traffic is abhorrent. This cancer on our social fabric must be eradicated. The desire to pursue vigorously all suspected participants is understandable and lauditory. Many things may be sacrificed in this effort, but the attorney/client privilege is not, to me a forfeitable item. This privilege is of such value to our civilized society and system of criminal justice that I must regretfully dissent from today's ruling, and its natural consequence—defense counsel becoming the gpvernment's unwilling instrument for the investigation and prosecution of clients for past criminal acts. I am convinced that society's momentary gain from this development will be far outdistanced by its ultimate loss.

*Id.* at 1304 (Politz, J., dissenting).

Any momentary gain to society by requiring the Witness-Attorney to testify against his client(s) would indeed be far outdistanced by its ultimate loss.

THEREFORE, it is ORDERED that the Government's Motion to Compel Grand Jury Witness to Testify and Produce Documents is hereby DENIED.