498 So.2d 508 (1986)
William W. CORRY, Petitioner,
v.
Willie MEGGS, State Attorney, and Peter Antonocci, Assistant State Attorney, Respondents.
No. BM-173.
District Court of Appeal of Florida, First District.
November 12, 1986.
Rehearing Denied December 31, 1986.
Philip J. Padovano, Tallahassee, for petitioner.
Jim Smith, Atty. Gen. and Andrea Smith Hillyer, Asst. Atty. Gen., Tallahassee, for respondents.
BOOTH, Chief Judge.
This cause is before us on a petition for writ of certiorari to review a nonfinal order denying a motion for a protective order limiting discovery by a grand jury.[1]
*509 Petitioner, a practicing attorney in Tallahassee, Florida, was served with a subpoena duces tecum, commanding him to appear before the Leon County Grand Jury and to "bring all ledgers and records of legal fees paid for or on behalf of Clarence Davis for calendar years 1985 and 1986."
Clarence Davis (Davis) is a client of petitioner who was considered a material witness to a homicide under investigation by the grand jury. At the time Davis retained petitioner, no charges were pending against Davis. However, after Davis appeared before the grand jury and testified, perjury charges were lodged against him. Thereafter, the subpoena in question was issued and served on Davis's attorney, petitioner herein, for the stated purpose of obtaining information with which to impeach the testimony of Davis.[2]
Petitioner filed with the Circuit Court of Leon County a motion for protective order, asserting the attorney-client privilege on behalf of his client Davis, defendant charged with perjury. Petitioner appeared before the grand jury as requested and testified, but declined to answer any questions or produce any records relating to the payment of Davis's attorney fees.
Petitioner filed an amended motion, asserting a constitutional right of privacy in said records under Article I, Section 23, of the Florida Constitution. Because of our determination on the asserted attorney-client privilege, we do not address that issue or the issue concerning the breadth of the subpoena which was not expressly ruled on below. See Eastern Airlines v. Gellert, 431 So.2d 329 (Fla. 3d DCA 1983).
At the hearing on the motion for protective order, petitioner Corry testified that the person who had paid Davis's attorney fees was also petitioner's client and was not one of the three persons under investigation for murder. Petitioner proposed to testify to that fact before the grand jury, but the State declined petitioner's offer.
The trial court denied the motion for protective order, holding: (1) petitioner's privacy rights under the Florida Constitution were not violated by the subpoena; (2) the subject matter of the subpoena is relevant to the grand jury inquiry in that it may reveal why Davis refused to cooperate; and (3) the attorney-client privilege does not apply because there is no confidential communication or indication that disclosure of requested information would provide the last evidentiary link incriminating Davis in the homicide.
The primary issue presented is whether the attorney-client privilege prevents disclosure of the identity of the fee-paying client under these circumstances. We hold the protective order should have been granted: (I) under the definition of "confidential communication" and "lawyer-client privilege" provided in Section 90.502, Florida Statutes; (II) because the "last-link" exception applies; and (III) because the State has failed to show compelling need by the exhaustion of other available sources not infringing on the confidential relationship.

I.
Florida's Evidence Code, Section 90.502., Florida Statutes (1985), which governs the attorney-client privilege, provides:
90.502 Lawyer-client privilege. 
(1) For purposes of this section:
(a) A "lawyer" is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.
(b) A "client" is any person, public officer, corporation, association, or other organization or entity, either public or private, who consults a lawyer with the purpose of obtaining legal services or who is rendered legal services by a lawyer.
(c) A communication between lawyer and client is "confidential" if it is not *510 intended to be disclosed to third persons other than:
1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.
2. Those reasonably necessary for the transmission of the communication.
(2) A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.
(3) The privilege may be claimed by:
(a) The client.
(b) A guardian or conservator of the client.
(c) The personal representative of a deceased client.
(d) A successor, assignee, trustee in dissolution, or any similar representative of an organization, corporation, or association or other entity, either public or private, whether or not in existence.
(e) The lawyer, but only on behalf of the client. The lawyer's authority to claim the privilege is presumed in the absence of contrary evidence.
(4) There is no lawyer-client privilege under this section when:
(a) The services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime of fraud.
(b) A communication is relevant to an issue between parties who claim through the same deceased client.
(c) A communication is relevant to an issue of breach of duty by the lawyer to his client or by the client to his lawyer, arising from the lawyer-client relationship.
(d) A communication is relevant to an issue concerning the intention or competence of a client executing an attested document to which the lawyer is an attesting witness, or concerning the execution or attestation of the document.
(e) A communication is relevant to a matter of common interest between two or more clients, or their successors in interest, if the communication was made by any of them to a lawyer retained or consulted in common when offered in a civil action between the clients or their successors in interest.
The above-quoted Florida statute, sub-section (1)(c), defines a communication as "confidential" when "it is not intended to be disclosed to third persons." Nothing in the statutory definition precludes client identity and payment of fee within the definition of "communication." There are five statutory exceptions to the attorney-client privilege, none of which is applicable here.
The matter is not without difficulty, however, since we have found no Florida cases interpreting Section 90.502 in the factual context of this case. Florida courts frequently refer to federal decisions as persuasive in interpretation of Florida's Evidence Code. Moore v. State, 452 So.2d 559 (Fla. 1984). But those decisions are of limited assistance in this instance due to the difference between the federal and Florida statutes on attorney-client privilege.[3]See Briggs v. Salcines, 392 So.2d 263 (Fla. 2d DCA 1980), petition for review denied, 397 So.2d 779 (Fla. 2d DCA 1981), cert. denied, 454 U.S. 815, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981).
*511 The general rule at common law and in the federal courts has been that the identity of a client and the payment of attorney fees are merely underlying facts of an attorney-client relationship, not confidential communications contemplated as privileged under the common law or the Code. Frank v. Tomlinson, 351 F.2d 384 (5th Cir.1965), cert. denied, 382 U.S. 1028, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966); In re Slaughter, 694 F.2d 1258, 1260 (11th Cir.1982). See also C. Ehrhardt, Florida Evidence §§ 501.1 and 502.5 (2d ed. 1984). However, that general rule is subject to various exceptions, most notably the so-called "last-link" exception. Several Florida cases have applied the general rule without discussion, e.g., Herrin v. Abbe, 55 Fla. 769, 46 So. 183, 185 (1908); Eastern Airlines v. Gellert, 431 So.2d 329 (Fla. 3d DCA 1983); and In re State Attorney's Office Investigative Subpoena dated November 2, 1983, 444 So.2d 592 (Fla. 2d DCA 1984). The later two cases, although decided after the adoption of the Evidence Code in Florida, do not mention, Section 90.502(2).[4]
The Florida Evidence Code defines the privilege and states specific exceptions to the privilege. Unlike the federal act,[5] it is a definitive statement or codification of the law of attorney-client privilege. The identity of a client and payment of a fee appear to be within the ambit of the statutory privilege and are not expressly or impliedly excluded exceptions. We hold that under the circumstances here such matters are intended to be confidential and do constitute confidential communications.

II.
The identity of the unnamed fee-paying client in this case is also privileged under the "last-link" exception to the general rule. This exception, recognized even in jurisdictions without a statute such as Florida's, applies where the identity of the client, if disclosed, would supply the last link of incriminating evidence in an existing chain and would likely lead to the filing of criminal charges.[6] In situations contemplated by the last-link exception, the client's identity and matters relating to fees are considered confidential communications.
In the case of In Re Grand Jury Proceedings (Jones), 517 F.2d 666 (5th Cir.1975), the government sought to compel the attorneys to tell the grand jury the names of unidentified persons who had arranged for bonds and legal fees on behalf of known clients. The court held that the attorney-client privilege applied, and disclosure was not required, holding (517 F.2d at 673-674):
In this country the privilege has belonged traditionally to the client, not the lawyer. It is a creature of public policy calculated to encourage people to seek legal advice on the basis of frank, useful communications. The purpose of the privilege would be undermined if people were required to confide in lawyers at the peril of compulsory disclosure every time the government decided to subpoena *512 attorneys it believed represented particular suspected individuals. Just as the client's verbal communications are protected, it follows that other information, not normally privileged, should also be protected when so much of the substance of the communications is already in the government's possession that additional disclosures would yield substantially probative links in an existing chain of inculpatory events or transactions. The client may reasonably expect the lawyer to maintain silence in such circumstances... . (emphasis added)
To like effect is Sepler v. State, 191 So.2d 588 (Fla. 3d DCA 1966), wherein the court held that an attorney was not required to disclose the identity of two other attorneys who had sought his legal advice where denial of the attorney-client privilege might lead to possible prosecution of yet another unnamed client.
Some courts have held that the privilege attaches under the "last-link" exception only in cases where the incriminating evidence is relevant to the crime for which legal advice initially was sought.[7] The better view adopted by the Eleventh Circuit, however, is that the exception applies when the incriminating evidence is likely to incriminate, notwithstanding the nature of attorney's initial services.[8]
In this case, the attorney sought to protect the identity of an unnamed client who had paid the legal fees of a named client (Davis). The privilege was asserted on behalf of Davis, a named client who was charged with perjury. It is unclear to what extent the privilege was asserted below, or ruled on, relative to the unnamed client.
The trial court ruled the unnamed client's payment of Davis's legal fees was not a confidential communication and that the disclosure of the unnamed client's identity would not provide the "last link" of evidence incriminating Davis in the homicide. This holding is substantiated by the record, which evidences no indication of an existing chain of incriminating evidence against Davis relating to the homicide. Apparently not considered or sufficiently brought to the attention of the court below, however, was the pending perjury charge and the relevancy of the requested information to that charge against Davis.
Davis was charged with perjury after testifying before a grand jury that he did not know any of the three murder suspects who left his premises with the victim. The "last-link" exception applies when disclosure would yield "substantively probative links in an existing chain of incriminating evidence."[9] It is not necessary that the disclosure be sufficient in itself to convict Davis of perjury, so long as the unnamed client's identity could yield "substantially probative links" in the perjury investigation.[10]
We therefore conclude that the attorney-client privilege for confidential communications applies here to prevent disclosure of the identity of the client, who had paid the *513 legal fees of Davis, because the disclosure would reveal more than the name of the client and could provide a "substantially probative link" inculpating Davis on the charge of perjury.

III.
Yet another, though related, basis exists for upholding the privilege here. The matter of whether the identity of a client is privileged from compelled disclosure by a court requires a balancing of interests, as stated in Weinstein, Evidence Section 503(a)(4)[02] at 503-035:
[T]he court should consider the client's name privileged if the facts indicate the client intended it remain confidential. When only precise identity would be relevant, the court must weigh such factors underlying the privilege as whether disclosure could be incriminating or dangerous, whether it would have a chilling effect on similar communications, and what the consequences of failure to consult with counsel would be against the increment in the administration of justice if full disclosure of identity were ordered.
This approach was followed by United States District Judge Hoeveler, In re Witness-Attorney Before Grand Jury No. 83-1, 613 F. Supp. 394, 398 (S.D.Fla. 1984), as follows:
A criminal defense attorney should not be brought before a federal grand jury and be compelled to divulge attorney-client secrets where the government could very well utilize alternative, less intrusive, methods in order to gain the very same information. .. . Before the government will be permitted to compel witness-attorneys to testify before a grand jury regarding matters which could be considered to be protected by the attorney-client privilege, it ought to be compelled to gain this information by first exhausting all of its investigatory powers which would not tread into the sacred area protected by the attorney-client.
In the instant case, the State presented no evidence concerning unavailability of alternative methods of investigation or circumstances compelling breach of the confidential relationship. In fact, the assistant state attorney admitted having no evidence that the fee payer was involved in the homicide or that his identity could actually provide information relative to Davis's unaccounted-for lack of cooperation in the investigation. The State should show exhaustion of other investigatory powers before intrusion on the attorney-client relationship will be allowed. In re Witness-Attorney Before Grand Jury No. 83-1, supra.
The attorney-client privilege is of ancient origin and based on sound public policy considerations. In support of those considerations, the Florida statute codifies the privilege and exclusions from the privilege. The statute does not automatically exclude, or include, client identity and payment of fee. Consideration must be given to the facts of the case and to protection of basic constitutional rights. The Florida Supreme Court in Mills v. State, 476 So.2d 172, 176 (Fla. 1985), held:[11]
The attorney-client privilege arises in the context of a relationship having great significance for the protection of fundamental personal rights. For example, the ability to speak freely to one's attorney helps to preserve rights protected by the fifth amendment privilege against self-incrimination and the sixth amendment right to legal representation. (emphasis added)
*514 Accordingly, certiorari is granted. The order below is reversed and the cause remanded with directions that the lower court grant petitioner's motion for a protective order.
ERVIN and THOMPSON, JJ., concur.
NOTES
[1] The order in this case permits discovery and renders any subsequent appeal ineffective; thus the aggrieved party may invoke this court's certiorari jurisdiction based on a departure from the essential requirements of law. City of Williston v. Roadlander, 425 So.2d 1175 (Fla. 1st DCA 1983).
[2] The assistant state attorney in charge of preparing the grand jury for the homicide investigation testified at the hearing on petitioner's motion for protective order that if in fact Davis had his legal fees paid by someone connected with the homicide, the information would be important for purposes of impeachment or showing bias or motive.
[3] Section 90.502, Florida Statutes, is modeled after proposed Rule 503, Federal Rules of Evidence, which was forwarded by the United States Supreme Court to Congress but not adopted. Instead, Rule 501, Federal Rules of Evidence, provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.
[4] See Ehrhardt, Florida Evidence § 103.2 at 4-5, (2d ed. 1984). Section 90.103(2), as ultimately adopted, makes the Code applicable to all criminal proceedings after the effective date of the Code, July 1, 1979. In 1981, the Legislature changed the effective date of the Code as it relates to civil actions to October 1, 1981.
[5] Supra at n. 3.
[6] The leading case from which this exception emanated, Baird v. Koerner, 279 F.2d 623, 630 (9th Cir.1960), held the identity of a client, on whose behalf an attorney made an anonymous tax payment, was protected under the attorney-client privilege, stating:

There is no federal body of law that requires the exclusion of the identity of the client from the extent of the attorney-client privilege. We believe it must be assessed on a case to case basis, depending on the particular facts of each case... . If the identification of the client conveys information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client, then the privilege should extend to such identification in the absence of other factors.
Id. at 630.
[7] See United States v. (Under Seal), 774 F.2d 624 (4th Cir.1985), and United States v. Hodge and Zweig, 548 F.2d 1347 (9th Cir.1977).
[8] See, e.g., In re Grand Jury Investigation (Harvey), 769 F.2d 1485 (11th Cir.1985); In re Witness-Attorney Before Grand Jury No. 83-1, 613 F. Supp. 394 (D.C.Fla. 1984); In re Grand Jury Proceedings (Jones), 517 F.2d 666 (5th Cir.1975); and Baird v. Koerner, 279 F.2d 623 (9th Cir.1960).
[9] In the case of In re Grand Jury Proceedings (Jones), 517 F.2d 666 (5th Cir.1975), the court rejected the government's argument that the exception holds only when disclosure would lead automatically to a conviction and held that the "correct approach" is whether the disclosure will yield "substantially probative links in an existing chain of incriminating evidence." 517 F.2d at 674.
[10] The assistant state attorney testified at the motion hearing that Davis's perjury charge stemmed from his testimony that he did not know any of the three men who left with one of the homicide suspects and that four or five other witnesses have indicated that Davis has had a close relationship with those three men. If the unnamed client were disclosed to be one of the three men or one of the four or five other witnesses, the disclosure would yield a substantially probative link of incriminating evidence.
[11] Note, "The Attorney-Client Privilege: Fixed Rules, Balancing, and Constitutional Entitlement," 91 Harvard L.Rev. 464, 486 (1977-78):

[W]hen the fifth and sixth amendments are considered together, the individual accused of crime does seem to have a right to attorney-client privilege. Without a right to privilege, the exercise of either constitutional right would require a waiver of the other... . Each conditions a constitutional right upon the waiver of another and thus turns a guarantee into a fiction. A right to attorney-client privilege is the only safeguard against the evisceration of these constitutional rights.