697 So.2d 1249 (1997)
The AMERICAN TOBACCO COMPANY; R.J. Reynolds Tobacco Company; RJR Nabisco, Inc.; Brown and Williamson Tobacco Corporation; Philip Morris, Incorporated; Philip Morris Companies, Inc.; Lorillard Tobacco Company; United States Tobacco Company; Ust, Inc.; the Council for Tobacco Research-USA, Inc., the Tobacco Institute, Inc., Petitioners,
v.
The STATE of Florida; Lawton M. Chiles, Jr., individually and as Governor of the State of Florida; Department of Business and Professional Regulation; the Agency for Health Care Administration; and Department of Legal Affairs; Dosal Tobacco Corp., Inc.; British-American Tobacco Co., Ltd.; Hill & Knowlton, Inc., Respondents.
No. 97-1405.
District Court of Appeal of Florida, Fourth District.
July 23, 1997.
Rehearing, Rehearing, and Certification Denied August 5, 1997.
*1251 Stephen J. Krigbaum of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., West Palm Beach, and Murray R. Garnick, Steven P. Lockman and Even Hurwitz of Arnold & Porter, Washington, D.C., and Sidney A. Stubbs, Jr. of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for petitioners.
William C. Gentry of Gentry, Phillips & Hodak, P.A., Jacksonville, and Ronald L. Motley, J. Anderson Berly, III, and Frederick C. Baker of Ness, Motley, Loadholt, et al., Charleston, SC, and Robert A. Butterworth, Attorney General, Tallahassee, and Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., and Robert M. Montgomery, Jr. of Montgomery & Larmoyeux, West Palm Beach, and Michael Maher of Maher, Gibson & Guiley, Orlando, and Wayne Hogan of Brown, Terrell, Hogan, Ellis, McClamma & Yegelwel, P.A., Jacksonville, for respondents.
Rehearing, Rehearing En Banc, and Certification Denied August 5, 1997.
WARNER, Judge.
This petition for certiorari involves a case of first impression regarding the standard of proof necessary to establish the crime-fraud exception to the attorney-client privilege. The trial court followed Haines v. Liggett Group, Inc., 975 F.2d 81 (3d Cir.1992), in determining that a prima facie showing had been made by the respondents that the exception had been established. We reject the petitioners' contention that the court departed from the essential requirements of law by failing to use a preponderance of the evidence standard. We concur with the trial court and adopt the procedure of Haines to establish that communications come within the crime-fraud exception. We therefore deny the writ.[1]
The various corporations and entities which manufacture, produce, and distribute cigarettes have been subjected to litigation over the effects of tobacco for over forty years. The companies have participated in a joint defense in these actions during this period.
The State of Florida has sued various tobacco manufacturers to recover health care costs incurred by the state in treating various diseases of medicaid smokers. It alleges that the tobacco products were the cause of these diseases and that the tobacco industry should be responsible for them.
For some time in this suit, the state had been seeking to establish the crime-fraud exception to the attorney-client privilege with respect to documents it sought to discover regarding the allegations of its complaint that the tobacco companies had engaged in fraud in covering up the significant health risks of its product. To determine this issue, the trial court had appointed a special master to conduct hearings on the matter with respect to other documents not part of those involved in this proceeding. Those hearings had begun in January of 1997.
In March of 1997, Liggett Group, Inc., a manufacturer and member of the joint defense, decided to settle the state's claim against it by, among other matters, agreeing to produce documents to the court which it had continuously claimed were protected by the attorney-client privilege.[2] As the Liggett *1252 Group was part of the joint defense for all of these years, these documents also included matters for which other tobacco defendants could, and did, assert an attorney-client privilege.
When the Liggett Group made its settlement with the state, the court directed the petitioner to submit several boxes of documents to the special master for in-camera review to determine whether the crime-fraud exception would apply. The petitioner objected, contending that the state had not made any showing that the documents related to any crime or fraud or contained evidence that the crime-fraud exception might apply. At the state's request, the circuit court ordered the state to designate twenty documents for immediate review by the special master. These were identified by a code number. After they were submitted to the master for review, he conducted a two-day hearing on the issue of whether the documents were excluded from the privilege by the crime-fraud exception. At that hearing, the state presented evidence regarding its contention that the tobacco companies had engaged in a long history of fraud and conspiracy in misleading the public as to the health risks of smoking and that their counsel were involved in carrying out the fraud. Likewise, the petitioners were permitted to argue extensively and present ex parte materials for the trial court to review in controverting the state's evidence. The petitioners initially advised the master that they did not assert a privilege in seven documents. Of the thirteen remaining documents, the master concluded that the state had made a prima facie case that eight of them involved the crime-fraud exception to the attorney-client privilege.
The petitioners filed exceptions to the master's report, on which the trial court heard a day of argument and was presented with all of the materials which the master had been furnished. In the end, the trial court overruled the exceptions to the master's report and ratified and confirmed the master's conclusions.
Petitioners filed this petition for writ of certiorari claiming that the trial court departed from the essential requirements of law in several respects.[3] Their primary contention is that the special master used the wrong burden of proof in determining that the crime-fraud exception to the attorney-client privilege applied, following the Haines case. It is this contention which we must address.
The attorney-client privilege is the oldest confidential communications privilege known in the common law. United States v. Zolin, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989); Haines, 975 F.2d 81.
It is therefore not only an interest long recognized by society but also one traditionally deemed worthy of maximum legal protection. "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980). The privilege's purpose is to encourage clients to make a full disclosure to their attorneys. Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).
Haines, 975 F.2d at 90; see also Anderson v. State, 297 So.2d 871, 871-72 (Fla. 2d DCA 1974); Dean v. Dean, 607 So.2d 494 (Fla. 4th *1253 DCA 1992), rev. dismissed, 618 So.2d 208 (Fla.1993).
The social policy protecting the privilege is not without its limits. The privilege "ceas[es] to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing." Zolin, 491 U.S. at 562-63, 109 S.Ct. at 2626 (quoting 8 John H. Wigmore, Evidence § 2298, at 573 (McNaughton rev. ed.1961)). Thus, consistent with the common law, Florida adopted the "crime-fraud" exception to the privilege in section 90.502(4)(a) of the Evidence Code, which provides:
(4) There is no lawyer-client privilege under this section when:
(a) The services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud.
§ 90.502(4)(a), Fla. Stat. (1995). "It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the `seal of secrecy,' ... between lawyer and client does not extend to communications `made for the purpose of getting advice for the commission of a fraud' or crime." Zolin, 491 U.S. at 563, 109 S.Ct. at 2626. Florida is in accord. See Kneale v. Williams, 158 Fla. 811, 30 So.2d 284, 287 (1947); In re Warner, 87 B.R. 199, 202 (Bkrtcy.M.D.Fla.1988). Moreover, Florida will be especially vigilant with respect to claims of attorney-client privilege as applied to corporations:
Because the nature of the corporation differs significantly from the individual person, the attorney-client privilege will also differ in its application to the corporation and to the natural person. First, a corporation can only act through its agents, whereas a natural person can seek legal advice and then directly act (or not act) upon that advice. Second, a corporation relies on its attorney for business advice more than the natural person. Thus, it is likely that the "zone of silence" will be enlarged by virtue of the corporation's continual contact with its legal counsel.
Discovery facilitates the truth-finding process, and although this process constitutes the core of any litigation, it must be tempered by the established interest in the free flow of information between an attorney and client. "Any standard developed, therefore, must strike a balance between encouraging corporations to seek legal advice and preventing corporate attorneys from being used as shields to thwart discovery." Thus, to minimize the threat of corporations cloaking information with the attorney-client privilege in order to avoid discovery, claims of the privilege in the corporate context will be subjected to a heightened level of scrutiny.

Southern Bell Tel. & Tel. Co. v. Deason, 632 So.2d 1377, 1383 (Fla.1994) (citations omitted, emphasis added.)
When a party opposes the attorney-client privilege through the assertion that the communications fell within the crime-fraud exception, the court must determine the issue in the first instance. See § 90.105(1), Fla. Stat. (1995). However, the statute does not set forth the burden of proof which must be met by the opponent of the privilege in order to overcome it. The petitioners here make the same argument that they made in Haines, namely that the trial court applied the incorrect, and overly lenient, burden in determining the issue.
The petitioners claim that Florida law clearly requires that a preponderance of the evidence test be applied to the determination of the existence of a privilege. Section 90.105(1) provides that it is the trial court which determines preliminary issues, including that of the existence of a privilege. In Romani v. State, 542 So.2d 984, 985 n. 3 (Fla.1989), the supreme court approved the holding of the third district that when preliminary facts are disputed, the offering party must prove them by a preponderance of the evidence. Romani did not deal with the attorney-client privilege; rather, it concerned the proof necessary in a conspiracy case in order to admit the statement of a co-conspirator under section 90.803(18)(e), Florida Statutes (1987). The third district relied on Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), for its analysis of the burden of proof to establish a preliminary fact. Romani v. State, 528 So.2d 15, 20 (Fla. 3d DCA 1988). In Bourjaily, analyzing Federal Rule of Evidence 104(a) *1254 (on which our Rule 90.105(1) is patterned), Chief Justice Rehnquist, writing for the Court, acknowledged that while the rule placed determination of preliminary fact issues with the trial court, it did not specify the burden of proof which should be applied to such determinations. The Court then held:
We are therefore guided by our prior decisions regarding admissibility determinations that hinge on preliminary factual questions. We have traditionally required that these matters be established by a preponderance of proof. Evidence is placed before the jury when it satisfies the technical requirements of the evidentiary Rules, which embody certain legal and policy determinations. The inquiry made by a court concerned with these matters is not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied. Thus, the evidentiary standard is unrelated to the burden of proof on the substantive issues, be it a criminal case, or a civil case. The preponderance standard ensures that before admitting evidence, the court will have found it more likely than not that the technical issues and policy concerns addressed by the Federal Rules of Evidence have been afforded due consideration.
483 U.S. at 175, 107 S.Ct. at 2778-79 (citations omitted). Despite this pronouncement, in Zolin, the Court refused to address the standard of proof to establish the crime-fraud exception to the privilege, and the federal courts have continued to apply the prima facie test.
In Romani, the third district noted that where a Florida law is patterned after a federal law on the same subject, it should be given the same construction in state courts as its federal counterpart is given in federal courts, at least to the extent that the federal interpretation is consistent with the policy of the Florida legislation. 528 So.2d at 21. Nevertheless, the federal courts have not come to a definitive statement as to the amount of proof necessary to establish the preliminary facts surrounding the existence or exceptions to questions of privilege. And, as is noted in Laser Industries, Ltd. v. Reliant Technologies., Inc., 167 F.R.D. 417, 436 (N.D.Cal.1996), none of the federal circuit cases discussing the problem of the burden of proof of the crime-fraud exception have discussed Rule 104(a), the federal counterpart of our Rule 90.105(1), in concluding that a prima facie evidence standard applies.
The state points to several Florida cases which used the test of prima facie evidence to establish the crime-fraud exception. In Eastern Air Lines, Inc. v. Gellert, 431 So.2d 329, 333 (Fla. 3d DCA 1983), the court determined that the party seeking disclosure must "make a showing that the communication partook of fraud" to overcome the privilege, citing to Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933), for the proposition that prima facie evidence is necessary. In addressing its application to the facts of the case, the court noted that the respondent had made no effort to show fraud. "Even had he done so, this showing... while sufficient to overcome the privilege as to that communication if unrebutted, does not make the privilege cease to exist as to other communications." Eastern Air Lines, 431 So.2d at 333 (emphasis added). The reference to the right to rebut the evidence indicates that a weighing process takes place. The prima facie standard was relied on in Florida Mining & Materials v. Continental Casualty Co., 556 So.2d 518 (Fla. 2d DCA 1990), which stated that "[t]o come within the statutory exception, Continental must allege and produce prima facie evidence that petitioners affirmatively sought the advice of counsel to procure a fraud." We also applied the "prima facie evidence" test in considering the crime-fraud exception when applied to an accountant-client privilege. Deloitte Haskins & Sells v. Southern Fin. Holding Corp., 566 So.2d 906 (Fla. 4th DCA 1990). The fifth district applied the same standard in Shell Oil Co. v. Par Four Partnership, 638 So.2d 1050 (Fla. 5th DCA 1994). Thus, four of the five district courts of appeal in Florida have used the prima facie standard in determining the crime-fraud exception to the attorney-client privilege.
Is the preponderance of the evidence standard footnoted in Romani incompatible with *1255 the prima facie evidence standard enunciated in four of the five district courts of appeal in Florida? We think not. In analyzing Haines, on which the special master and trial court relied, we think the standard and procedure established actually incorporate the weighing function of a preponderance standard. We turn then to Haines.
In Haines, the tobacco companies were sued by the personal representative of the estate of an individual who allegedly died as a result of smoking-related illnesses. As part of that suit, the plaintiff sought documents, many of which are the same documents demanded in this case. The issues of discovery and the application of the crime-fraud exception to the attorney-client privilege are identical to the ones in this suit. The district court ordered the production of certain documents, as it found that the crime-fraud exception applied. The petitioners requested review, claiming that the district court had determined the applicability of the exception using a prima facie case standard, rather than the stricter preponderance of the evidence test.
The third circuit referred to Justice Cardozo's opinion in Clark as establishing the evidentiary standard for application of the crime-fraud exception to the privilege:
There must be a showing of a prima facie case sufficient to satisfy the judge that the light should be let in.... To drive the privilege away, there must be "something to give colour to the charge;" there must be "prima facie evidence that it has some foundation in fact." When the evidence is supplied, the seal of secrecy is broken.
Haines, 975 F.2d at 95 (quoting Clark, 289 U.S. at 14-15, 53 S.Ct. at 469 (footnote and citations omitted)). After reviewing the definitions developed by other federal courts, the Haines court concluded that the "party seeking discovery must present evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met." 975 F.2d at 95-96.
Consistent with Zolin, the court determined that the decision to engage in an in-camera review of the documents involved an even more lenient standard of proof. Indeed, Zolin held that "[b]efore engaging in in camera review to determine the applicability of the crime-fraud exception, `the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person,' that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." Zolin, 491 U.S. at 572, 109 S.Ct. at 2631 (citation omitted). For this purpose, it would be sufficient for the trial court, in its discretion, to consider only the presentation made by the party challenging the privilege. Haines, 975 F.2d at 96.
However, in determining whether the crime-fraud exception applies, a more formal procedure is required.
The importance of the privilege ... as well as fundamental concepts of due process require that the party defending the privilege be given the opportunity to be heard, by evidence and argument, at the hearing seeking an exception to the privilege.... We are concerned that the privilege be given adequate protection, and this can be assured only when the district court undertakes a thorough consideration of the issue, with the assistance of counsel on both sides of the dispute.
Haines, 975 F.2d at 97. Thus, the Haines court contemplated an adversarial proceeding where each party could present evidence and argument on whether the evidence presented, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met.
While Haines relied on the statement in Clark that the standard of proof to establish the crime-fraud exception was a prima facie showing, in a footnote in Zolin the Supreme Court acknowledged that this statement had received much criticism. It stated that "[t]he quantum of proof needed to establish admissibility was then, and remains, subject to question." Zolin, 491 U.S. at 565 n. 7, 109 S.Ct. at 2627 n. 7. However, the issues in Zolin did not require the Court to further address the proper burden of proof. The criticisms of the original Clark prima facie showing arose mainly from the traditional *1256 formulations of the prima facie evidence test as not allowing the rebuttal to such evidence. The Haines procedure solves this issue by mandating the right of both parties to present evidence and argument on the issue.
We note that the Haines court did envision that the trial court would weigh the evidence, stating, "where a fact finder undertakes to weigh evidence in a proceeding seeking an exception to the privilege, the party invoking the privilege has the absolute right to be heard by testimony and argument." 975 F.2d at 96 (footnote omitted; emphasis added). When a finder of fact "weighs" evidence, we know of no lesser burden to apply to the proof than a preponderance of evidence, the higher burdens being clear and convincing evidence or evidence beyond a reasonable doubt.
We must presume that on this issue, the trial court may be confronted with conflicting evidence and inferences from that evidence, from which it must draw its ultimate conclusion. Haines cites to Matter of Feldberg, 862 F.2d 622, 626 (7th Cir.1988), for the proposition that "after prima facie showing that exception applies, party asserting privilege should have opportunity to rebut; `[i]f the court finds the explanation satisfactory, the privilege remains.'" Haines, 975 F.2d at 97. What this means to us is that the party opposing the privilege on the crime-fraud exception has the initial burden of producing evidence which, if unexplained, would be prima facie proof of the existence of the exception. The burden of persuasion then shifts to the party asserting the privilege to give a reasonable explanation of the conduct or communication. If the court accepts the explanation as sufficient to rebut the evidence presented by the party opposing the privilege, then the privilege remains. However, if after considering and weighing the explanation the court does not accept it, then a prima facie case exists as to the exception, and the privilege is lost. Thus, the trial court must consider the evidence and argument rebutting the existence of the crime-fraud exception and must weigh its sufficiency against the case made by the proponent of the exception.
We think that Haines contemplates the use of a preponderance of the evidence standard in weighing the evidence and rebuttal evidence of the parties in determining whether the evidence, if believed by the trier of fact, would be sufficient to support a finding of fraud. As the Court noted in Bourjaily, the evidentiary issue in a preliminary fact question is "not whether the proponent of the evidence wins or loses his case on the merits, but whether the evidentiary Rules have been satisfied." 483 U.S. at 175, 107 S.Ct. at 2778. We think the Haines procedure accomplishes that.
The vast majority of state and federal courts have applied the prima facie evidence standard to establish the crime-fraud exception to the attorney-client privilege. See Haines, 975 F.2d at 95-96; see also United Servs. Auto. Ass'n v. Werley, 526 P.2d 28 (Alaska 1974); Pearce v. Stone, 149 Ariz. 567, 720 P.2d 542 (App.1986); State Farm Fire & Cas. Co. v. Superior Court (Taylor), 54 Cal. App.4th 625, 62 Cal.Rptr.2d 834 (1997); People v. Superior Court (Bauman & Rose), 37 Cal.App.4th 1757, 44 Cal.Rptr.2d 734 (1995); Dickerson v. Superior Court, Santa Clara County, 135 Cal.App.3d 93, 185 Cal.Rptr. 97 (1982); Law Offices of Bernard D. Morley, P.C. v. MacFarlane, 647 P.2d 1215 (Colo. 1982); Matter of Sutton, No. 96M-08-024, 1996 WL 659002 (Del.Super.Ct. Aug.30, 1996); Wallace, Saunders, Austin, Brown & Enochs, Chartered v. Louisburg Grain Co., 250 Kan. 54, 824 P.2d 933 (1992); Levin v. C.O.M.B. Co., 469 N.W.2d 512 (Minn.App. 1991); State ex rel. Peabody Coal Co. v. Clark, 863 S.W.2d 604 (Mo.1993); National Util. Serv., Inc. v. Sunshine Biscuits, Inc., 301 N.J.Super. 610, 694 A.2d 319 (App.Div. 1997); Caldwell v. River Oaks Trust Co., No. 01-94-00273-CV, 1996 WL 227520 (Tex.App. May 2, 1996); Arkla, Inc. v. Harris, 846 S.W.2d 623 (Tex.App.1993). Only two states have disagreed. See State v. Bright, 676 So.2d 189 (La.Ct.App.1996); Purcell v. District Attorney, 424 Mass. 109, 676 N.E.2d 436 (1997); see also Laser Industries, 167 F.R.D. at 417.
Based upon the foregoing authorities we cannot conclude that, in following Haines, the trial court departed from the essential *1257 requirements of law. Indeed, the trial court followed clearly established law in assessing this issue. The special master found that there was evidence that the defendants hid from and misrepresented to the public the health risks of smoking and that their conduct constituted fraud on the public. There was also evidence that the defendants utilized their attorneys in carrying out their misrepresentations and concealment to keep secret research and other conduct related to the true health dangers of smoking. Thus, the master found evidence sufficient to support the state's theory of fraud and that the attorneys were used to perpetuate the fraud. The requirements of Haines were met.
With respect to the remaining issues raised by the petitioners, we conclude that none of them rise to the level of a departure from the essential requirements of law.
The petition for writ of certiorari is denied.
GUNTHER and POLEN, JJ., concur.
NOTES
[1] We note that many of the transcripts of proceedings in this matter were filed in a format not in conformance with the rules. See Fla. R. Jud. Admin. 2.070(g). While this format certainly saves paper, it makes the matter almost unreadable due to the small size of the type. We will not accept further transcripts filed in this manner without specific leave of court.
[2] Many of these documents have already been publicly disclosed as a result of litigation in the Haines case. See Haines v. Liggett Group, Inc., 140 F.R.D. 681 (D.N.J.1992).
[3] Because the trial court's order would compel the production of documents, the petitioners have satisfied the threshold certiorari requirement that the order causes harm not remediable by appeal. Bared & Co. v. McGuire, 670 So.2d 153 (Fla. 4th DCA 1996). This is the typical "cat out of the bag" discovery order.