967 So.2d 1065 (2007)
BNP PARIBAS, a foreign corporation and Paribas Principal, Inc., a foreign corporation, Petitioners,
v.
James A. WYNNE, III, individually, and as trustee of the James A. Wynne, III Revocable Trust No. 2 dated March 19, 1998, Respondent.
No. 4D07-1166.
District Court of Appeal of Florida, Fourth District.
November 7, 2007.
*1066 Elliot B. Kula, Elliot H. Scherker and Daniel M. Samson of Greenberg Traurig, P.A., Miami, Mark F. Bideau of Greenberg Traurig, P.A., West Palm Beach, Caran Rothchild of Greenberg Traurig, P.A., and Richard E. Berman of Berman, Kean & Riguera, P.A., Fort Lauderdale, for petitioners.
David B. Pakula of David B. Pakula, P.A., Pembroke Pines, Carlos A. Rodriguez and William R. Leonard, Fort Lauderdale, for respondent.
WARNER, J.
BNP Paribas and Paribas Principal, Inc. (collectively "Paribas") petition this court for a writ of certiorari seeking review of an order compelling Paribas's vice president, Fletcher Duke, to answer questions which invade the attorney-client privilege in a suit involving an application for a pre-judgment writ of garnishment. The trial court had previously found that the application involved a fraud upon the court. As a result, the trial court concluded, based on the fraud exception, that the attorney-client privilege did not apply to questions about the writ. See § 90.502(4)(a), Fla. Stat. (2007). It ordered Duke to respond. We grant the petition, because petitioners are entitled to an evidentiary hearing on the issue.
Paribas sued respondent James Wynne individually and as trustee of the James Wynne, III Revocable Trust, alleging breach of contract and fraudulent inducement regarding a corporate merger of three petroleum companies. Most of the claims arise from a recapitalization agreement between Wynne's company Petropac, Inc. and two other petroleum companies. Petitioners also alleged that Wynne breached his employment agreement. Petitioners sought $25 million in damages.
In connection with this litigation, Paribas filed an ex parte motion for writ of garnishment seeking to garnish Wynne's securities accounts. Duke signed an affidavit in support of the writ, and the trial court granted it, freezing Wynne's accounts. Wynne filed a motion to dissolve the writ, asserting that Duke did not have personal knowledge of the facts. At a hearing, after assertions by Wynne's counsel, the trial judge expressed the opinion that Paribas received some confidential information regarding how much money Wynne had in these accounts because Paribas specifically asked for $11 million in the petition for writ of garnishment, not the amount they were actually seeking in damages. As a result, the court dissolved the writ.
From that point on, Wynne has sought to obtain information from Duke about the affidavit. In addition to discovery in the writ of garnishment suit, Wynne filed suit against Paribas, Duke, and Paribas's attorney *1067 for damages for wrongfully obtaining information later used in securing the writ of garnishment.
For the next three years, the parties sparred over discovery in the garnishment suit, because Wynne sought to question Duke with respect to information claimed to be protected by the attorney-client privilege. Paribas also claimed that Wynne was using discovery in the first suit to pursue his claims in the second suit. Wynne filed multiple motions to compel, and the court frequently ordered Paribas and Duke to respond to discovery. The judge would express his frustration with the pace of discovery and his belief that Duke was hiding information.
This petition involves one of the many motions to compel discovery filed by Wynne. In this motion, Wynne sought to invoke the crime-fraud exception to the attorney-client privilege to obtain discovery from Duke. Paribas asserted that the court could abrogate the attorney-client privilege under the crime-fraud exception only if Wynne establishes at an evidentiary hearing that legal advice was sought from the attorney to commit, or to attempt to commit, a crime or fraud. Wynne's attorney suggested that he had evidence to show fraud, but he did not produce the documents he claimed showed the fraud. The court took no evidence.
Concluding the hearing, the court determined that it had previously determined from the "totality of the circumstances" that the initiation of the writ of garnishment was permeated with fraud. The court found that the fraud exception applied, and, as a result, Duke could not invoke the attorney-client privilege at his upcoming deposition. Petitioners seek review of this order by certiorari.
The attorney-client privilege is the oldest confidential communication at common law and as this court has recognized, it is "traditionally deemed worthy of maximum legal protection." Am. Tobacco Co. v. State, 697 So.2d 1249, 1252 (Fla. 4th DCA 1997). However, the privilege does not apply if the lawyer's services "were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud." § 90.502(4)(a), Fla. Stat. "Under the statute, it is immaterial whether the lawyer knows that the client intends to commit a crime or perpetrate a fraud, so long as the client has the intention to do so sometime in the future." First Union Nat'l Bank v. Turney, 824 So.2d 172, 187 (Fla. 1st DCA 2001). "The dispositive question is whether the attorney-client communications are part of the client's effort to commit a crime or perpetrate a fraud." Id.
In American Tobacco, this court addressed as a matter of first impression what standard of proof and procedure should be used in determining whether the crime-fraud exception applies. We agreed with the Third Circuit in Haines v. Liggett Group, Inc., 975 F.2d 81 (3d Cir.1992), that evaluating the exception requires an adversarial proceeding that would allow both parties to present evidence and argument on the issue. Am. Tobacco Co., 697 So.2d at 1255. The party invoking the crime-fraud exception has the initial burden of presenting prima facie evidence of the existence of the exception. Id. at 1256. The burden then shifts to the party asserting the attorney-client privilege to show, by a preponderance of the evidence, that there is a reasonable explanation for the conduct or communication. Id.
If the court accepts the explanation as sufficient to rebut the evidence presented by the party opposing the privilege, then the privilege remains. However, if after considering and weighing the explanation the court does not accept it, then a prima facie case exists as to the exception, and the privilege is lost. *1068 Thus, the trial court must consider the evidence and argument rebutting the existence of the crime-fraud exception and must weigh its sufficiency against the case made by the proponent of the exception.
Id. What is apparent from American Tobacco is that an evidentiary hearing is necessary before the court can find the crime-fraud exception to the attorney-client privilege.
The court did not hold an evidentiary hearing in this case. Instead, it relied on the inferences it drew from the dissolution of the writ of garnishment to conclude that Duke had fraudulently sworn to the facts in the affidavit supporting the writ. At each hearing, the court became more and more convinced that Duke committed fraud and lied. The fact that Duke may have lied, however, does not prove that the attorney-client exception may be abrogated. Although there have been multiple hearings on motions to compel and other matters, there has been no evidentiary hearing to determine the essential facts. The trial court has relied on depositions and contested statements by Wynne's attorney. As the court said in Horning-Keating v. State, 777 So.2d 438, 446 (Fla. 5th DCA 2001), "[I]t would be a denial of due process, in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 9 of the Florida Constitution, to base an order to compel testimony on an unsworn statement or on testimony taken outside the hearing on the motion to compel."
This court has found that applying the crime-fraud exception without an evidentiary hearing is a departure from the essential requirements of law. See IDS Long Distance, Inc. v. Heiffer, 837 So.2d 1130 (Fla. 4th DCA 2003). Wynne did not offer evidence to satisfy his burden, and Paribas and Duke should have been allowed to present countervailing evidence and argument before the court abrogated the attorney-client privilege.
We grant the petition and order that the court must conduct a hearing in compliance with the procedure set forth in American Tobacco.
GROSS and MAY, JJ., concur.