NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


TRANS HEALTH MANAGEMENT INC.;              )
FUNDAMENTAL LONG TERM CARE                 )
HOLDINGS, LLC; MURRAY FORMAN;              )
LEONARD GRUNSTEIN; ALAN M.                 )
GROCHAL; MARIA ELLENA CHAVEZ-              )
RUARK; and FUNDAMENTAL                     )
ADMINISTRATIVE SERVICES, LLC,              )
                                           )
          Appellants,                      )
                                           )
v.                                         )      Case No. 2D12-764
                                           )
RICHARD NUNZIATA, as Personal              )
Representative of the Estate of Elvira     )
Nunziata, Deceased,                        )
                                           )
          Appellee.                        )
_____  )
                                           )
FUNDAMENTAL ADMINISTRATIVE                 )
SERVICES, LLC,                             )
                                           )
          Appellant,                       )
                                           )
v.                                         )      Case No. 2D12-809
                                           )
RICHARD NUNZIATA, as Personal              )
Representative of the Estate of Elvira     )
Nunziata, Deceased,                        )
                                           )
          Appellee.                        )
_____  )

FUNDAMENTAL LONG TERM CARE
HOLDINGS, LLC; MURRAY FORMAN;
and LEONARD GRUNSTEIN,

    Appellants,

v.                         Case No. 2D12-810

RICHARD NUNZIATA, as Personal
Representative of the Estate of Elvira
Nunziata, Deceased,

    Appellee.

_____

TRANS HEALTH MANAGEMENT, INC.;
ALAN M. GROCHAL; MARIA ELLENA
CHAVEZ-RUARK; FUNDAMENTAL
LONG TERM CARE HOLDINGS, LLC;
and FUNDAMENTAL ADMINISTRATIVE
SERVICES, LLC,

    Appellants,

v.                         Case No. 2D12-2102

RICHARD NUNZIATA, as Personal         CONSOLIDATED
Representative of the Estate of Elvira
Nunziata, Deceased,

    Appellee.

_____

Opinion filed December 19, 2014.

Appeals from the Circuit Court for Pinellas
County; Pamela A.M. Campbell, Judge.

Steven M. Berman, Seth P. Traub, and
Duane A. Daiker of Schumaker, Loop &
Kendrick, LLP, Tampa, for Appellant
Trans Health Management, Inc.

Matthew Triggs, Lisa Markofsky, and Margo
Lyon of Proskauer Rose LLP, Boca Raton,

for Appellants Fundamental Long Term Care
Holdings, LLC; Murray Forman; and Leonard
Grunstein.

Hala Sandridge of Fowler White Boggs P.A.,
Tampa, for Appellants Alan M. Grochal and
Maria Ellena Chavez-Ruark.

Gerald B. Cope, Jr., and Nancy A.
Copperthwaite of Akerman Senterfitt, Miami;
and Jason J. Mendro of Gibson, Dunn &
Crutcher, LLP, Washington, D.C. (withdrew
after briefing), for Appellant Fundamental
Administrative Services, LLC.

Kristin A. Norse, Stuart C. Markman, and
Melissa N. Madsen of Kynes, Markman &
Felman, P.A., Tampa; and Bennie Lazzara,
Jr., Isaac R. Ruiz-Carus, and Joanna M.
Greber of Wilkes & McHugh, P.A., Tampa,
for Appellee.

VILLANTI, Judge.

In these consolidated cases arising out of the death of a nursing home resident, defendant Trans Health Management, Inc. (THMI), and nonparties Alan M. Grochal[1] (the Receiver), Maria Elena Chavez-Ruark (the Receiver's counsel), Fundamental Long Term Care Holdings, LLC (FLTCH), Murray Forman, Leonard Grunstein, and Fundamental Administrative Services, LLC (FAS) seek review of the final judgment entered in favor of Richard Nunziata, as Personal Representative of the Estate of Elvira Nunziata, Deceased (the Estate). In addition, nonparties the Receiver,

---

[1]Grochal was involved in this litigation solely in his capacity as the court-appointed receiver for THMI's former parent company, Trans Healthcare, Inc. (THI). We refer to Grochal as "the Receiver" for convenience and because both the trial court's orders and our opinion apply to anyone serving in the capacity of receiver for THI.

- 3 -

the Receiver's counsel, FLTCH, Forman, Grunstein, and FAS seek review of a post-final-judgment injunction entered against them.  Further, nonparty FAS seeks review of a pretrial discovery order that found that it had committed a fraud on the court.  Based on the findings of a commissioner appointed by this court to address THMI's corporate status, we are compelled to dismiss the appeal of the final judgment by THMI.  We also dismiss the appeal of the final judgment by the other Appellants because they have no standing to appeal that judgment, to which none of them are parties.  However, the other Appellants do have standing to challenge the post-final-judgment injunction and the discovery order, and we reverse the injunction and quash the discovery order.

**Final Judgment**

In December 2005, the Estate sued seventeen defendants after Ms. Nunziata fell to her death in the nursing home where she was a resident.  The Estate sought compensatory damages for both lethal and nonlethal negligence and wrongful death, and it requested a trial by jury.  After extensive discovery, the Estate dismissed all of the defendants from the case except THMI.

In early 2010, counsel for THMI moved to withdraw, allegedly at the request of THMI and its parent company, Trans Healthcare, Inc. (THI).[2]  The court granted the motion and gave THMI thirty days in which to retain new counsel.  However,

---

[2]Although not entirely clear from the record, it appears that THI sold the assets of THMI to FLTCH before this litigation was commenced.  However, it also appears that THI was defending THMI in this action pursuant to an indemnity agreement in the asset sale agreement that required it to do so.  During the course of this litigation, THI entered court-ordered receivership in Maryland.  Nonparty Grochal was the court-appointed receiver for THI during the time that THI was defending THMI in this action, and he allegedly had the authority to make litigation-related decisions on behalf of THMI.  The parties have hotly contested the Receiver's actual authority in this litigation, but resolution of that dispute need not be addressed in this appeal.

- 4 -

no new counsel appeared for THMI. After THMI failed to answer the Estate's second amended complaint, a default was entered against THMI as to its liability to the Estate.

Not long after THMI's counsel withdrew, the Estate obtained leave of court to amend its complaint to add a count for punitive damages. The Estate then engaged in extended financial discovery, which reached not only THMI, but also nonparties THI, FLTCH, FAS, and others. During this extended discovery period, THMI remained without counsel.

Ultimately, a trial on the Estate's damages was set for Monday, January 9, 2012. When the trial date was set, THMI was still unrepresented. However, on the Friday before trial, Marsha Rydberg, a Tampa attorney, filed a notice of appearance as counsel for THMI, seeking to defend it at the Monday damages trial. She also filed a motion to set aside the default against THMI and a motion for summary judgment, and she supported motions to appear pro hac vice filed by two out-of-state attorneys who were also seeking to defend THMI. On Monday morning, the Estate moved to strike Attorney Rydberg's notice of appearance and pleadings, contending that she had no authority to represent THMI and that, as a dissolved corporation, THMI was precluded from defending itself by the operation of section 607.1622(8), Florida Statutes (2011). After an unnoticed, nonevidentiary hearing on the Estate's motion to strike, the trial court granted the motion, struck Attorney Rydberg's notice of appearance and the pleadings she had filed, and proceeded to hold the scheduled damages trial against THMI as an "empty chair" defendant.[3] The jury subsequently returned a verdict against

---

[3]Presumably, the trial court struck the motions to appear pro hac vice filed by out-of-state counsel as the court never otherwise ruled on them.

THMI of $60 million in compensatory damages and $140 million in punitive damages, and the trial court entered a final judgment against THMI for these damages.

Faced with this large judgment, THMI filed a notice of appeal of the final judgment through new counsel. The Receiver, the Receiver's counsel, FLTCH, Forman, Grunstein, and FAS also filed notices of appeal. The Estate moved to dismiss the appeal by THMI contending, as it did in the trial court, that the attorneys purporting to represent THMI had no authority to do so and that, even if they did, THMI was precluded from defending itself by section 607.1622(8). The Estate also argued that the appeal of the final judgment by the Receiver, the Receiver's counsel, FLTCH, Forman, Grunstein, and FAS should be dismissed because those entities had no standing to appeal a judgment that was not entered against them. Because the record before this court was inadequate to determine whether THMI actually fell within the provisions of section 607.1622(8), we appointed a commissioner to make factual findings on this issue. And based on those factual findings, as well as the facts apparent from the voluminous record which we have extensively reviewed, we conclude that we are legally required to dismiss the appeal of the final judgment by both THMI and the other Appellants.

As to THMI, we must dismiss the appeal because it is precluded from prosecuting this appeal by the provisions of section 607.1622(8). That section provides that a corporation that has been administratively dissolved <u>for failing to file an annual report</u> "shall not be permitted to maintain or defend any action in any court of this state" until the annual report is filed and the appropriate taxes are paid. While administratively dissolved corporations are generally permitted to wind up their affairs, <u>see</u>

§ 607.1421(3), and while administrative dissolution does not generally "[p]revent commencement of a proceeding by or against the corporation in its corporate name," § 607.1405(2)(e), these general rules do not apply to the specific circumstance of a corporation administratively dissolved for failing to file its annual report. Instead, for those corporations, the specific provisions of section 607.1622(8) control over the more general provisions of section 607.1405(2)(e). See, e.g., Cricket Props., LLC v. Nassau Pointe at Heritage Isles Homeowners Ass'n, 124 So. 3d 302, 307 (Fla. 2d DCA 2013) ("[A] more specific statute covering a particular subject is controlling over one covering the same subject in general terms." (citing Mendenhall v. State, 48 So. 3d 740, 748 (Fla. 2010))).

In this case, THMI admitted at the time of trial that it was a dissolved corporation. However, THMI did not admit to the reason for its dissolution, and the Estate did not present any evidence on that issue. Without evidence as to the reason for THMI's dissolution, the trial court had no factual basis to support a finding that THMI was precluded from defending itself. And without any evidence on this issue in the record, this court had no way to determine whether THMI was precluded from prosecuting this appeal. However, the commissioner appointed by this court has furnished a report based on stipulated evidence indicating that THMI was administratively dissolved for failing to file its annual report. Hence, we can only conclude that THMI is statutorily barred from prosecuting this appeal. Accordingly, we

must grant the Estate's motion to dismiss the appeal of the final judgment brought by

THMI.[4]

We must also dismiss the appeal of the final judgment by the other

Appellants because they had no standing to bring an appeal from that judgment.  "To

have standing, a party must demonstrate a direct and articulable interest in the

controversy . . . [and] a legally cognizable interest that would be affected by the

outcome of the litigation."  Centerstate Bank Cent. Fla., N.A. v. Krause, 87 So. 3d 25, 28

(Fla. 5th DCA 2012) (citations omitted).  "The interest cannot be conjectural or merely

hypothetical."  Id.  In the context of this case, the "controversy" at issue is not the entire

case—it is the specific action contemplated by the notice or motion at issue.

Inarguably, THMI as the judgment debtor had standing to appeal the final

judgment against it.  However, the remaining Appellants, who are not judgment debtors

and who therefore have no legally cognizable interest that will be affected by a ruling on

the validity of the final judgment, have no standing to appeal that judgment.  Thus, to

the extent that the Appellants other than THMI have attempted to appeal the final

---

[4]In the trial court, the court also struck Attorney Rydberg's notice of appearance based on its conclusion that Attorney Rydberg had no authority to represent THMI.  However, the Estate provided no Florida case law in the trial court—nor does it provide any here—that would support the notion that it had standing to challenge the authority of an attorney who appears on behalf of the opposing party.  Given that an attorney's time is money, we find it almost inconceivable that an attorney would jump into the fray of complex litigation without the authority of the client whom he or she claims to represent.  Further, we note that an attorney's obligation of candor as an officer of the court would generally preclude an attorney from purporting to represent a party without actually having the authority to do so.  In light of these financial and ethical restraints, we are unwilling to create precedent that would allow parties to challenge the authority of their opponent's counsel.

judgment, we must dismiss their appeals. The practical effect of these rulings on the motions to dismiss is that the final judgment against THMI will stand.

**Permanent Injunction**

In the first of the consolidated appeals, the Receiver, the Receiver's counsel, FLTCH, Foreman, Grunstein, and FAS (collectively the nonparties) challenge a permanent injunction that was entered almost immediately after entry of the final judgment and that purports to prohibit the Receiver and his "agents and assignees" from challenging in any court anywhere in the country any aspect of the Estate's entitlement to collect its judgment. Because this injunction was entered in violation of the due process rights of the nonparties, we reverse.

Some additional facts are necessary to understand the context out of which this reversal arises. At the conclusion of the damages trial on Wednesday afternoon, counsel for the Estate approached the court and handed it an unverified motion asking the trial court to enjoin certain nonparties from making any collateral attacks on the judgment in any forum. The trial court permitted Attorney Rydberg, who had been present in the gallery throughout the trial, to speak to this issue. Attorney Rydberg first pointed out that she had been retained to represent only THMI—not the identified nonparties. Therefore, none of the nonparties against whom the injunction was sought were represented by counsel who was present in the courtroom. In addition, Attorney Rydberg correctly pointed out that the trial court had no jurisdiction to enjoin nonparties to the action. She also pointed out that even if the court somehow had jurisdiction over the nonparties, they were entitled to an evidentiary hearing before entry of any injunction. Despite these arguments, the trial court entered a temporary

injunction against the nonparties and set an evidentiary hearing for that Friday morning, a day and one-half later.

Nothing in the record establishes that either the Estate or the court made any attempt to notify any of the nonparties of the scheduled Friday hearing. And, not surprisingly, no one appeared for the nonparties at the Friday hearing. At that hearing, the Estate argued that the Receiver had submitted himself to the jurisdiction of the court by having the receivership domesticated in Florida and by filing an earlier motion to stay the proceedings. The Estate also argued that FAS had "injected itself" into the case when it filed a motion for protective order that sought to prevent the disclosure of THMI's attorney-client communications during punitive damages discovery. The Estate made no arguments as to how the trial court could have jurisdiction over the Receiver's counsel or FLTCH, Forman, and Grunstein. Instead, the Estate argued simply that once "the receivership" was domesticated in Florida, the court had jurisdiction over "them." The Estate also handed the trial court a binder full of what it characterized as "evidence" but which appears from the transcript to be copies of pleadings. The trial court accepted the binder and relied on its contents without requiring the Estate to lay any foundation for the admission of the documents and without any request for judicial notice. After hearing argument from the Estate's counsel, the trial court issued a permanent injunction against these nonparties, which they now appeal.

It is axiomatic that a trial court may not issue an injunction that interferes with the rights of those who are not parties to the action. See, e.g., In re Guardianship of Shell, 978 So. 2d 885, 891 (Fla. 2d DCA 2008); Blue Dolphin Fiberglass Pools of Fla., Inc. v. Swim Indus. Corp., 597 So. 2d 808, 809 (Fla. 2d DCA 1992); Chastain v.

Uiterwyk, 462 So. 2d 1212, 1213 (Fla. 2d DCA 1985); Trisotto v. Trisotto, 966 So. 2d 986, 988 (Fla. 5th DCA 2007); Leighton v. First Universal Lending, LLC, 925 So. 2d 462, 464 (Fla. 4th DCA 2006); Sheoah Highlands, Inc. v. Daugherty, 837 So. 2d 579, 583 (Fla. 5th DCA 2003).  "The general rule in equity is that all persons materially interested, either legally or beneficially, in the subject-matter of a suit, must be made parties either as complainants or defendants, so that a complete decree may be made binding upon all parties."  Oakland Props. Corp. v. Hogan, 117 So. 846, 848 (Fla. 1928). And this is true even when one of the parties to the action has partial "control" over the nonparties sought to be enjoined.  See Blue Dolphin Fiberglass Pools, 597 So. 2d at 809 (holding that court had no authority to enjoin a nonparty corporation from selling its stock even though the judgment debtor was fifty percent owner of the corporation); Chastain, 462 So. 2d at 1213 (holding that court had no authority to enjoin a nonparty corporation from disposing of assets even though the corporation was wholly owned by the defendant).

The record before us clearly shows that, regardless of whether the Receiver attempted to obtain affirmative relief in this case, neither he nor any of the other entities enjoined by the injunction were actually parties to the action.  None of the nonparties were named in the Estate's complaint, and none were served with process. Despite having multiple opportunities to amend its complaint, the Estate never added the Receiver, his counsel, FAS, or FLTCH as parties.  Having elected not to make these entities parties to the action so that the trial court could enter a complete decree that would be binding on them, the Estate could not legally obtain an injunction against these nonparties.  On this basis alone, we must reverse the permanent injunction.

- 11 -

Moreover, even if there was some basis upon which to find that the nonparties were subject to the jurisdiction of the court, we would be compelled to reverse the injunction because it was entered without notice and an opportunity to be heard.

> While a temporary injunction may be obtained on mere notice, and in certain circumstances even without notice, a permanent injunction cannot be properly granted in a suit simply on notice, without process duly issued and served, and without formality of pleading, or presentation of proof, in the absence of waiver.

Scarbrough v. Meeks, 582 So. 2d 95, 96 (Fla. 1st DCA 1991) (citing Smith v. Housing Auth. of City of Daytona Beach, 3 So. 2d 880, 881 (Fla. 1941)). Further, any entity to be enjoined has a due process right to have sufficient notice to be able to appear and have a meaningful opportunity to be heard. "Procedural due process requires that each litigant be given proper notice and a full and fair opportunity to be heard." Carmona v. Wal-Mart Stores, E., LP, 81 So. 3d 461, 463 (Fla. 2d DCA 2011) (citing Cnty. of Pasco v. Riehl, 635 So. 2d 17, 18-19 (Fla. 1994); Vollmer v. Key Dev. Props., Inc., 966 So. 2d 1022, 1027 (Fla. 2d DCA 2007)).

Here, the injunction was issued without notice to any of the nonparties, without the issuance of process on any of them, and without the presentation of admissible evidence. And because none of the nonparties had notice of the hearing, none had a meaningful opportunity to appear and be heard. Standing alone, this also requires reversal of the permanent injunction.

The Estate argues that at a minimum the Receiver had notice because Attorney Rydberg knew on Wednesday of the Friday hearing. However, this argument ignores the fact that Attorney Rydberg repeatedly told the court that she did not

represent the Receiver. The Estate cannot force Attorney Rydberg to represent the Receiver simply by repeatedly insisting that she represented it. This is all the more true because the record shows that a Miami law firm represented the Receiver when he moved to stay the proceedings, and that firm had never withdrawn. Nevertheless, the Estate did not even attempt to serve the Miami firm with the notice of the hearing on the permanent injunction. The Estate cannot have it both ways. Either the Receiver appeared through Miami counsel and that counsel was entitled to notice of the injunction hearing or he had not appeared and so was not subject to the court's jurisdiction. Either set of facts requires us to reverse the permanent injunction.

As to FAS, FLTCH, Forman, and Grunstein, the Estate argues that they should not be entitled to appeal because the injunction does not apply to them. However, the permanent injunction specifically references the actions of FAS and FLTCH as being the conduct that the Estate is seeking to enjoin. Further, the permanent injunction purports to enjoin the Receiver from seeking the same relief that FAS and FLTCH are seeking. The Estate's argument that the injunction forbids only the Receiver—and not FAS and FLTCH—from pursuing this relief is specious at best and does not preclude FAS and FLTCH from seeking relief on this record. Cf. Mem'l Health Sys., Inc. v. Halifax Hospice, Inc., 689 So. 2d 373, 375-76 (Fla. 1st DCA 1997) (permitting Memorial to appeal an injunction that prohibited the Agency for Health Care Administration from issuing Memorial a license to operate because, even though the injunction did not prohibit Memorial from taking any action, the injunction had Memorial "as an unmistakable target"). Accordingly, we reject the Estate's argument on this point.

Finally, even though FAS and FLTCH are not specifically named in the injunction, they nevertheless have standing to seek review, whether through this appeal or by a petition for writ of certiorari. "An appellate court has certiorari jurisdiction where a nonparty seeks relief from an order and its nonparty status would otherwise deprive the nonparty of an adequate remedy by direct appeal." Generation Invs., LLC v. Al-Jumaa, Inc., 53 So. 3d 372, 372 (Fla. 5th DCA 2011) (citing Dep't of Corr. v. Grubbs, 884 So. 2d 1147, 1147 (Fla. 2d DCA 2004)). While neither FAS nor FLTCH sought a writ of certiorari, when a party seeks the incorrect remedy, this court will treat the matter as if the correct remedy was sought. See Fla. R. App. P. 9.040(c). And the trial court's injunction order—which purports to enjoin nonparties from challenging the final judgment in any forum anywhere in the United States (presumably including the receivership proceedings) through an injunction entered without notice or opportunity to be heard—constitutes a very clear departure from the requirements of the law.

Both FAS and FLTCH spend a large portion of their respective briefs arguing the merits of the Estate's injunction claim. They also argue that the injunction is facially insufficient. However, we need not reach either of these arguments. Because none of the nonparties had notice of the hearing or an opportunity to be heard, the injunction was entered in violation of due process and must be reversed. If the Estate decides to pursue injunctive relief on remand, it must ensure that all the entities it seeks to enjoin are made parties to the case, and it must ensure that all the new parties have sufficient notice of any hearing to enable them to have a meaningful opportunity to be heard.

**Discovery Order**

In the second consolidated appeal, FAS argues that the trial court erred when it adopted the magistrate's order that found that FAS had acted to perpetrate a fraud on the court and that ordered an in-camera review of attorney-client privileged documents pursuant to the crime/fraud exception to the attorney-client privilege rule. Because the special magistrate's finding of fraud was not based on evidence admitted at a properly noticed evidentiary hearing, we must quash this discovery order.[5]

Here again, additional facts are necessary to understand the issue. During discovery concerning punitive damages issues, the Estate subpoenaed records documenting certain communications between THMI's former counsel (the Quintairos firm) and FAS. The Quintairos firm filed a motion for protective order on the basis that the communications between it and FAS were protected by attorney-client privilege. The firm asserted that FAS was a third-party claims administrator for THI, that THI was required to defend THMI due to an indemnification agreement between them, that FAS had retained the Quintairos firm to represent THMI pursuant to THI's obligations under the indemnification agreement, and that therefore the attorney-client privilege attached

---

[5]The Estate contends that this court has no authority to review this order because it is nonfinal and nonappealable since disclosure of the documents was never ordered. The Estate also contends while the order might be reviewable through a petition for writ of certiorari, FAS did not seek certiorari relief. However, as we discussed above, if a party seeks an improper remedy, this court will treat the proceeding as if the proper remedy had been sought. See Fla. R. App. P. 9.040(c). Given the nature of the order and the Estate's subsequent use of it in other proceedings, we conclude that FAS must be permitted to seek judicial review of this order at this juncture. Hence, we treat FAS's "appeal" of this order as a petition for writ of certiorari.

to communications between FAS and the Quintairos firm concerning THMI and its defense.

The Estate did not file a written response to the motion for protective order, but it scheduled a hearing on the motion before a special magistrate. This hearing was not noticed as an evidentiary hearing. At the hearing, the Estate argued that the documents were not covered by the attorney-client privilege because there was no attorney-client relationship between FAS and the Quintairos firm. In the alternative, it argued that any attorney-client privilege was waived under the crime/fraud exception to the statutory privilege.

While the Estate admitted that the hearing was not noticed as an evidentiary hearing, it nevertheless handed the special magistrate copies of deposition transcripts and portions of two email chains that it claimed supported its argument that FAS had engaged in fraud. Over FAS's objection, the special magistrate received these documents and considered them. None of the documents were authenticated before they were handed to the magistrate, and the magistrate did not require the Estate to lay a foundation for admission of the documents before it accepted and relied on them to find that FAS—a nonparty to the action—had been actively trying to perpetrate a fraud on the court. This finding was memorialized in the special magistrate's report and recommendation, which the trial court adopted over FAS's objection. And based on this finding, the trial court ordered the Quintairos firm to produce the disputed documents to the court for an in-camera inspection. In this appeal, FAS argues that both the finding of fraud and the order requiring production for in-camera review should be quashed. We agree.

As a preliminary matter, it is apparent that the special magistrate could not have made his finding that FAS engaged in fraud based on an in-camera review of the documents requested by the Estate because those documents had not been produced at the time of the hearing.  Indeed, it was the magistrate's recommended order that ultimately resulted in the Quintairos firm having to turn over the documents for the in-camera inspection.  For this reason, the magistrate's finding of fraud was necessarily based on the documents "introduced" at the hearing on the Quintairos firm's motion for protective order.  This "finding," and the resulting order, must be quashed for three separate reasons.

First, the order must be quashed because it was entered without the court first holding an evidentiary hearing.  In American Tobacco Co. v. State, 697 So. 2d 1249, 1254 (Fla. 4th DCA 1997), the Fourth District held that the party seeking disclosure of attorney-client privileged documents under the crime/fraud exception must produce "prima facie evidence" that the withholding party affirmatively sought the advice of counsel to procure a fraud.  See also Fla. Mining & Materials Corp. v. Cont'l Cas. Co., 556 So. 2d 518, 519 (Fla. 2d DCA 1990).  By this, the court meant that the " 'party seeking discovery must present evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met.' " Am. Tobacco, 697 So. 2d at 1255 (quoting Haines v. Liggett Grp., Inc., 975 F.2d 81, 95-96 (3d Cir. 1992)).  Further, " 'fundamental concepts of due process require that the party defending the privilege be given the opportunity to be heard, by evidence and argument, at the hearing seeking an exception to the privilege.' " Id. (quoting Haines, 975 F.2d at 97).

- 17 -

In this case, the hearing at which the Estate raised the crime/fraud exception was not noticed as an evidentiary hearing. Therefore, neither FAS nor the Quintairos firm were prepared to meet the Estate's allegations of fraud—nor should they have been. In the absence of a properly noticed evidentiary hearing on the issue of the alleged fraud, neither the special magistrate nor the trial court could properly make a finding that the crime/fraud exception applied. Hence, that finding, made without such a hearing, constitutes a departure from the essential requirements of the law.

Second, even if the argument could somehow be made that the hearing before the magistrate was properly noticed as an evidentiary hearing, the Estate did not offer any legally admissible evidence to establish any fraud. Instead, the only "evidence" offered by the Estate consisted of unauthenticated documents that contained multiple layers of hearsay. These unauthenticated and inadmissible documents could not legally provide the necessary evidentiary basis for a finding of fraud, and the magistrate's and the court's reliance on these documents constitutes a departure from the essential requirements of the law.

Third, even if the Estate had laid the proper foundation for the magistrate to consider the contents of the offered documents, those documents do not establish a prima facie case of fraud—and certainly not a finding of fraud on the court. As this court has explained:

> "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense."

Ramey v. Haverty Furniture Cos., 993 So. 2d 1014, 1018 (Fla. 2d DCA 2008) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)).

Here, the documents presented at the hearing do not support the special magistrate's finding of fraud and certainly do not establish that either THMI, FAS, or the Quintairos firm sentiently set in motion an unconscionable scheme to impair the court's ability to adjudicate the matter or to hamper the Estate's ability to present its claims. At best, they establish that FAS had a confusing corporate structure that resulted in the Estate having to deal with two sets of counsel rather than one. And while, as the Estate argues, the documents it presented may have been sufficient to order an in-camera review of the requested documents to determine whether any fraud had occurred, see Am. Tobacco Co., 697 So. 2d at 1255, they were not sufficient, standing alone, for either the special magistrate or the trial court to make the actual finding of fraud that was included in the order. For this reason as well, the trial court's order constitutes a departure from the essential requirements of the law.

In this appeal, the Estate contends that this order has been rendered moot by its withdrawal of its request for the documents. However, the record shows that the Estate has been using the trial court's factual finding of fraud in this case and others in an effort to convince various courts to sanction FAS. The Estate's continued use of this order for purposes other than to obtain the requested documents precludes us from finding that the ruling is moot.

For all of these reasons, we quash the discovery order and the special magistrate's report and recommendations on which it is based.

**Conclusion**

For the foregoing reasons, we reverse the permanent injunction entered against the nonparty Appellants and quash the discovery order that purported to find that FAS had committed a fraud on the court. As to the final judgment, we must dismiss the appeal based on THMI's inability to prosecute an appeal pursuant to section 607.1622(8) and the nonparty Appellants' lack of standing.

We do, however, take this opportunity to remind trial judges that they have an obligation to all parties—not just represented parties—to ensure that trials are conducted in such a manner as to comport with due process and the rules of evidence and procedure. As this court has stated, "[e]ven though a default has been entered against one of the parties, the trial judge has the responsibility to keep the proceedings within reasonable bounds in order that justice may not be subverted." Caughey v. Beller, 322 So. 2d 83, 86 (Fla. 2d DCA 1975). And the Fifth District has explained:

> Trial judges must be fair, impartial, and disinterested participants in the proceedings. It is their obligation to see that justice is done and to that end, they have no more important duty than to ensure that the facts are properly developed through compliance with the rules of evidence and trial procedure and that those facts relevant and material to the questions at issue are fairly and properly presented to the jury.

Vaughn v. Progressive Cas. Ins. Co., 907 So. 2d 1248, 1253 (Fla. 5th DCA 2005) (emphasis added); see also O'Riley v. Rogers, 69 A.3d 1007, 1010-11 (Del. 2013) ("A trial judge has a duty to make sure 'that the rules of practice and evidence are applied . . . with or without objection by counsel.' " (quoting State Highway Dep't v. Buzzuto, 264 A.2d 347, 351 (Del. 1970))); Francis v. Brown, 836 A.2d 206, 210-11 (R.I. 2003) (noting that the parties are required to present their cases "within the confines of

the Rules of Evidence" and that the trial court "is charged with the duty of enforcing these rules and conducting a trial that comports with proper procedure"); cf. City of Fayetteville v. Edmark, 801 S.W.2d 275, 283 (Ark. 1990) ("The trial court controls the admissibility of evidence and the determination of applicable law and always has the inherent authority to secure the fair trial rights of litigants before it."); In re A.C., 80 Cal. App. 4th 994, 1001 (Cal. Ct. App. 2000) ("[T]he court has an independent interest in ensuring trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all that observe them."); Harris v. People, 888 P.2d 259, 270 (Colo. 1995) ("The role of the trial judge is to administer justice, control courtroom decorum, and ensure that the case is decided on the basis of relevant evidence and the proper inferences therefrom.") (Vollack, J., concurring in part and dissenting in part). Thus, the trial court has an independent obligation to ensure that all parties receive a fair trial.

In this case, the record shows that the trial court permitted the Estate to introduce evidence without laying the proper foundation, permitted the Estate to introduce inadmissible evidence, permitted the Estate to make legally improper closing arguments, and gave jury instructions that improperly invaded the fact-finding province of the jury. But neither the absence of counsel representing THMI nor its inability to legally defend itself operated to suspend the rules of evidence or trial procedure. While the trial court was obviously not required to make objections on behalf of THMI, the court should nevertheless have required the Estate to comply with the rules of evidence and procedure. We certainly recognize the extra challenges that exist when a trial court presides over a matter involving an unrepresented party, but that situation nevertheless

requires the trial court to vigilantly ensure that the represented parties scrupulously adhere to the law.  Hence, while we dismiss the appeal of the final judgment on legal grounds, our dismissal should not be viewed as condoning the conduct of the proceedings below.

Reversed in part, quashed in part, and dismissed in part.


DAVIS, C.J., and SLEET, J., Concur.